Appellant was convicted of theft by deception of $300, in violation of § 13A-8-1 (1), § 13A-8-2 (2), and § 13A-8-4 (a), Code of Alabama 1975. He was sentenced to fifteen years' imprisonment as a habitual offender. Three issues are raised by him on appeal.
 I
Appellant contends that the trial court erred in denying his motion for a mistrial based upon an answer by the victim in the case. She answered a question propounded by the court during her cross-examination by stating, inter alia, that she had viewed some "mugshots."
Appellant's counsel began his cross-examination of the witness with a detailed inquiry concerning the events leading up to her swearing out a warrant for appellant's arrest. The response made the basis of this ground of appeal and the testimony surrounding that response read as follows:
 "Q: And then you swore a warrant out on him about the next Monday or Tuesday, didn't you?
"A: Yeah.
 "THE COURT: Was it Monday or Tuesday that the warrant was sworn out?
 "THE WITNESS: It was on a Monday. Well, let's see. Like I said, it's been a long time. I really don't — Let's see. I know it was on Monday when I called the officer, and then he sent a lady out there and had me to pick some mugshots out.
 "THE COURT: Wait a minute now. Let's not get into that.
"THE WITNESS: I think it was the next day.
"THE COURT: That's all right.
"Q: So would that have been a Tuesday?
"THE COURT: He wants to know if that was a Tuesday?
"A: Uh huh. I told him I think so."
Appellant's counsel did not object to the answer, he did not move for its exclusion, and he never requested any curative instructions. After the conclusion of the witness's testimony, counsel moved for a mistrial, contending that the response was ineradicably prejudicial. The trial court offered to instruct the jury to disregard the statement, but appellant refused, stating that he did not want to overemphasize it.
We conclude that the reference to "mugshots" was "Not of such a highly prejudicial nature as to require a mistrial." Smileyv. State, 371 So.2d 469, 471 (Ala.Cr.App. 1979); see also,Impson v. State, 331 So.2d 837 (Ala.Cr.App. 1976).
In Elmore v. State, 414 So.2d 175, (Ala.Cr.App. 1982), we said:
 "Even those `inadvertant slips' which are prejudicial to the defendant need not be cause for a mistrial where the judge acts promptly to impress on the jury that the improper statements are not to be considered by them. `When prejudicial remarks have been made, the trial judge is in a better position that an appellate court to determine whether the remarks were so prejudicial as to be ineradicable.' Chambers v. State, 382 So.2d 632, 635 (Ala.Cr.App.), cert. denied, 382 So.2d 636 (Ala. 1980)." (citation omitted)
As Judge Bowen stated in Diamond v. State, 363 So.2d 109, (Ala.Cr.App. 1978): "A mistrial does not serve the same function as a mere objection or motion to strike and is not ordinarily used to indicate a mere erroneous ruling of law. It specifies such fundamental error in a trial as to vitiate the result."
Neither does a motion for mistrial include a motion to strike or exclude testimony as a lesser prayer for relief. Van Antwerpv. State, 358 So.2d 782 (Ala.Cr.App.), cert. denied,358 So.2d 791 (Ala. 1978); see also Renfroe v. State, 382 So.2d 627
(Ala.Cr.App.), cert. denied, 382 So.2d 632 (Ala. 1980).
The necessary steps to preserve the event for our review were not taken.
 II
Appellant next argues that a fatal variance existed between the indictment and the state's proof. *Page 641 
The indictment charged appellant with "knowingly obtain[ing], by deception, control over Three Hundred Dollars . . . the property of Lizzie Branch. . . ." Appellant contends that at trial, however, the state proved that he received control over a check drawn by Mrs. Branch and made payable to appellant in the amount of $300. He asserts that this variance was fatal and that his motion to quash the indictment should have been granted.
The evidence tended to prove that at her initial meeting with appellant, Mrs. Branch signed a contract prepared by appellant for the painting of her house and paid him, by check, $300 of the $1,000 total contract price. The check was written on Wednesday, October 15, 1980, but she did not fill in the date as she did not have sufficient funds in her checking account to cover it. She asked appellant to hold the check until Friday, October 17, before presenting it for payment. Appellant agreed. On October 16, appellant returned to Mrs. Branch's house and began to scrape and prepare it for painting. Appellant and Mrs. Branch discussed their agreement for presentment of the $300 check. On October 17, appellant called Mrs. Branch and told her that he had dropped the check in some oil and needed another one issued to him. She told the appellant to bring the oleaginous check to her and she would issue him another.
After 4:00 p.m., appellant arrived at the Branch home. He did not have the soiled check with him but offered an explanation for its absence. Appellant then urged Mrs. Branch to write him another check. She refused and he quit the job and left.
The custodian of records of the First National Bank of Birmingham testified that the check in question had been endorsed and cashed by appellant on October 16, 1980.
In urging reversal of his cause, appellant relies uponAirhart v. State, 388 So.2d 211 (Ala.Cr.App. 1979), cert. denied, 388 So.2d 213 (Ala. 1980). The indictment in Airhart
charged embezzlement under § 13-3-90, Code of Alabama 1975 (now repealed), alleging that the defendant embezzled a specified sum of "lawful currency." Proof at trial established that a check of the same amount was embezzled. There the proof varied fatally from the language of the indictment.
Airhart was decided before the effective date of the Alabama Criminal Code. Adoption of the new code cures this problem presented in Airhart. The commentary to § 13A-8-2, asserts that the purpose of enacting the section "is to create a unified theft offense which eradicates the common law distinctions between the crimes of larceny, embezzlement, and false pretenses." It further states that:
 "Aside from the benefit of clearer language, the Criminal Code will reduce the risk of variance between pleading and proof, and upon a charge of theft will allow a conviction upon evidence of the commission of any one of the traditional offenses of larceny, embezzlement, or false pretenses. The gist of the offense will be `the obtaining of control over property in which another had an interest and the deliberate diversion of it for the offender's own purposes.' Michigan Revised Criminal Code § 3208, Commentary at 227." Commentary, § 13A-8-2, page 268.
For a variance to be material, it must mislead the accused or be substantially injurious to him in making his defense. Cokerv. State, 396 So.2d 1094, (Ala.Cr.App. 1981).
As stated in House v. State, 380 So.2d 940, 942-43 (Ala. 1979):
 "The policy behind the variance rule is that the accused should have sufficient notice to enable him to defend himself at trial on the crime for which he has been indicted and proof of a different crime or the same crime under a different set of facts deprives him of that notice to which he is constitutionally entitled.
". . . .
 "This court has stated the policy behind the fatal variance rule as follows: `The purpose of the rule is for identification and notice to defendant, and if those purposes *Page 642 
are met no substantial injury to defendant results.'"
". . . .
 "The law of this state is well settled that `[t]here is no material variance where there is proof of so much of an indictment as shows the defendant committed a substantial offense specified therein.'"
(citations omitted)
In Green v. State, 377 So.2d 4 (Ala.Cr.App. 1979), defendant was indicted for the grand larceny of "$436.00 in lawful United States Currency, . . . ." Proof at trial established that the defendant stole "$400 in cash, $30 in food stamps, and a credit due bill for $6.26." This court, after reviewing several similar cases involving such a variance between the indictment and proof, found the above variance "not . . . harmful to the defendant." Id. at 8. In so holding, we stated:
 "Here, the indictment was sufficient (1) to identify the charge lest the defendant should be tried for an offense different from that intended by the grand jury, (2) to enable the defendant to prepare for his defense, (3) to protect the defendant against the possibility of being twice put in jeopardy for the same offense, and (4) to enable the court, after conviction, to pronounce judgment on the record. Sanders, 289 Ala. [224] at 228, 266 So.2d 802."
Thus, we find the variance between indictment and proof in the instant case not misleading to appellant or substantially injurious to him in preparing his defense. Therefore, the variance is not "material" within the Coker definition.
 III
The trial court committed no abuse of discretion in refusing to allow appellant's expert witness to testify to the reasonable cost of painting and scraping the Branch house. The expert had no firsthand knowledge concerning the area of Branch's house to be painted or its condition prior to appellant's scraping. In addition, the expert had no knowledge of the type of materials, if any, used for preparing Branch's home for painting and he did not know the type of paint to be used. There was no other evidence as to these matters. Further, there was no evidence of what percentage of the total cost was for materials. The testimony of appellant's expert unequivocally established his lack of knowledge of the facts. Absent such information, there was nothing upon which he could base an opinion. White v. State, 294 Ala. 265, 314 So.2d 857
(1975); Kozlowski v. State, 248 Ala. 304, 27 So.2d 818 (1946);Rhodes v. State, 232 Ala. 509, 168 So. 869 (1936).
The judgment of the circuit court is affirmed.
AFFIRMED.
All the Judges concur.