Petitioner, Vincent Lee Marek, was convicted of first degree rape on January 28, 1986, and was sentenced to serve 20 years in the state penitentiary. We issued the writ of certiorari to review the following issues:
 1) Whether the trial court's refusal to conduct an in camera review of the victim's grand jury testimony in order to determine if it was discoverable was error.
 2) Whether the trial court properly allowed evidence of a tacit admission by the defendant.
 3) Whether the trial court's refusal to give one of petitioner's jury charges constituted reversible error.
The facts of this case are summarized as follows:
On November 20, 1986, T.R. left work at approximately 12:20 a.m. She drove to her residence, Knollwood Apartments, and upon entry into the parking lot of the complex, she noticed the headlights of a vehicle behind her. After she had parked her car, she noticed that the other vehicle, a red pick-up truck, had parked in a space nearby. When she exited her car, she was confronted by a man wielding a knife, who told her to "come on." She followed the man to the red pick-up truck, where he raped her. After the rape, she was released, whereupon she contacted the police.
The police, after interviewing T.R. and obtaining a description of the assailant, took her to a hospital, where evidence was collected. Tests on the evidence were inconclusive when compared to the blood and saliva of the petitioner.
On the night of November 20, 1986, at approximately 10:00 p.m., E.B., also a resident of the Knollwood Apartment complex, noticed the headlights of a vehicle behind her as she drove into the parking lot of the complex. Prior to parking her car, Ms. B. pulled over and allowed the vehicle — a red pick-up truck — to park. She then parked *Page 377 
her car and walked toward the complex. The red pick-up truck came back toward Ms. B. and stopped a short distance from her, blocking her path. The driver of the truck leaned out of the vehicle and said "come here." Ms. B. began to scream and then ran, at which time the truck exited the parking lot. She then contacted the police department. Ms. B. also contacted Fred Jones, an acquaintance of hers, and he stayed with her until the police arrived and made an incident report.
Jones, who had heard Ms. B. describe the pick-up truck and its driver, noticed a truck and driver who fit that general description parked in a local convenience store parking lot several days later. Jones testified at trial that the driver seemed to be watching a young woman use a public telephone, and that when she completed her call and drove away, the driver of the red pick-up truck followed her to another local apartment complex. Jones copied the tag number of the truck and followed it to the apartment complex, where he parked his car between the truck and the unidentified woman's car. After a few minutes, the truck exited the parking lot, and Jones followed. He subsequently found a police officer and gave him the tag number of the truck.
Mobile Police Officer Colleen Garrett McNorton investigated the case and determined that the tag on the pick-up truck had been issued to Master Manufacturing Company. On November 24, 1986, Officer McNorton spoke with Donald Coram, a partner in Master Manufacturing, and she learned that Vincent Lee Marek, petitioner, regularly drove the truck. McNorton was allowed to view the truck that afternoon, and she determined that the tag and the truck did, in fact, match the descriptions given. On that same afternoon Officer McNorton presented a photographic display of six pictures, including one of Marek, to T.R., and T.R. selected Marek's photograph as that of the person who had raped her.
 I
Marek contends that the trial court erred when it failed to compel the state to produce T.R.'s grand jury testimony for anin camera review to determine the discoverability of that testimony. As grounds for his motion, Marek states:
 1) That the state did not deny the existence of tape recordings of the grand jury testimony.
 2) That T.R.'s testimony in the December 1986 preliminary hearing was inconsistent with her testimony at the January 1988 trial.
Marek contends that T.R.'s grand jury testimony should be treated as any other statement as defined by Cooks v.State, 50 Ala. App. 49, 276 So.2d 634 (1973). Marek argues that where grand jury testimony is preserved in a tape recording, that testimony must be considered a "statement" under Cooks, supra, because the witness is testifying under oath. He suggests that the state should not be allowed to contend that the testimony was not a statement on the basis that the testimony had been preserved only by tape recording, because, he, Marek, first requested that the tape be transcribed five months before the trial.
The state, on the other hand, argues that Marek failed to lay the proper predicate for examination of a witness's grand jury testimony. It argues that a defendant is required byMillican v. State, 423 So.2d 268 (Ala.Crim.App. 1982), to make an offer of proof of the following:
 "1) that the matters contained in the witness's grand jury testimony were relevant to the subject matter of the prosecution;
 2) and that there exists an inconsistency between grand jury testimony and trial testimony."
423 So.2d at 270.
The state's contention here is that Marek failed to make the offer of proof required by Millican, which, the State suggests, is the minimum requirement necessary to be met before the trial court should conduct an in camera inspection of the witness's grand jury testimony. The state further argues that Marek's allegations of inconsistencies in the victim's testimony at the preliminary hearing and at trial were insufficient to require the court to conduct an in *Page 378 camera examination of the victim's grand jury testimony.
We agree with the state on this issue. In Ex partePate, 415 So.2d 1140 (Ala. 1981), we held that a defendant is entitled to inspection of a state witness's statement for the purpose of cross-examining or impeaching the witness. We required not only a showing of inconsistency in the witness's grand jury testimony and the witness's trial testimony, but, also, a showing that a denial of the defendant's motion to produce the testimony for examination would cause the defendant's trial to be fundamentally unfair.
In the instant case, we hold that Marek failed to lay the proper foundation in his assertion that T.R.'s testimony at the preliminary hearing was inconsistent with her trial testimony. His mere assertion that there is no showing of an inconsistent statement between the grand jury testimony and his trial testimony is an insufficient foundation for the trial court to order the transcription of grand jury testimony. Furthermore, we are not of the opinion that Marek's trial was made fundamentally unfair by the refusal of the trial court to grant his motion for review of T.R.'s testimony before the grand jury.
 II
At trial, the following colloquy occurred during the direct examination of Officer McNorton:
 "Q. Did anyone ever tell you that there was anybody else who worked there that you ought to check out?
 "MR. BEEBE: Your Honor, I'm going to object. That certainly would be hearsay as to what anybody told her. We don't even know time, place, date, or anything. So, it would be hearsay.
 "THE COURT: Talking about when she went there to investigate? When would that be?
 "MS. MURPHREE: I already asked her. It was 11/24/86 at Master's Manufacturing.
 "MR. BEEBE: I just renew my objection. It would be hearsay.
"THE COURT: Overruled.
"MR. BEEBE: Thank you.
 "A. No one said anything specifically, but both the other officer and myself, we both commented that the place of business had an awful lot of men with beards. So, we were open for suggestions.
"MS. MURPHREE:
 "Q. Uh-huh. And nobody said, you've got the wrong person, check out so and so?
"A. Oh, no, ma'am. No one said that.
"Q. The Defendant didn't?
"A. Oh, no.
"Q. His father didn't?
"A. No.
"Q. Never gave you a name?
"A. Of someone else?
 "MR. BEEBE: Your Honor, I'd like to make a motion outside the presence of the jury at this time and approach the bench if I might.
"THE COURT: Come on up.
"(Sidebar conference, on the record.)
 "MR. BEEBE: At this time, I'd like to make a motion for a mistrial. I have been told by this lady (indicating) in her pretrial response to discovery that there were no statements, no indications of anything from the Defendant.
 "She is now trying to show a tacit admission. And I think that's a violation of the pretrial order. And I also think it's a violation of my client's Fifth Amendment rights. And for those grounds, I make a motion for a mistrial.
"THE COURT: Deny your motion. Stay away from that.
"MR. BEEBE: Thank you."
Marek claims error in this colloquy on two grounds:
 1) That no proper predicate was laid for the introduction of a purported tacit admission.
 2) That the above colloquy adversely affected his Fifth Amendment privilege not to be a witness against himself.
The State argues that Marek did not object to its questions or move to exclude the answers, but, rather, moved for a mistrial, *Page 379 
which, it argues, does not preserve Marek's issue for review. To support its argument, the State cites Hunt v.State, 453 So.2d 1083 (Ala.Cr.App. 1984), and Farley v.State, 437 So.2d 639 (Ala.Cr.App. 1983). In Hunt, the Court of Criminal Appeals, relying on Farley, held that "a motion for mistrial does not serve the same function as a mere objection or motion to strike; neither does it include a motion to strike or exclude testimony as a lesser prayer for relief." Hunt, at 1086. In Farley, a witness testified that she had viewed "mugshots." Farley did not object to her testimony, but, at the conclusion of the witness's testimony, Farley moved for a mistrial, contending that the witness's response was ineradicably prejudicial. The Court of Criminal Appeals wrote:
 "As Judge Bowen stated in Diamond v. State, 363 So.2d 109 (Ala.Cr.App. 1978): 'A mistrial does not serve the same function as a mere objection or motion to strike and is not ordinarily used to indicate a mere erroneous ruling of law. It specifies such fundamental error in a trial as to vitiate the result.'
 "Neither does a motion for mistrial include a motion to strike or exclude testimony as a lesser prayer for relief. Van Antwerp v. State, 358 So.2d 782 (Ala.Cr.App.), cert. denied, 358 So.2d 791 (Ala. 1978); see also Renfroe v. State, 382 So.2d 627
(Ala.Cr.App.), cert. denied, 382 So.2d 632 (Ala. 1980).
 "The necessary steps to preserve the event for our review were not taken."
Farley, at 640.
We reject those holdings in Hunt andFarley. If a litigant points out an alleged error and asks for such drastic relief as a mistrial, then the litigant is certainly "objecting" to the question or line of questioning made the basis of the motion for the mistrial. Marek objected to the question "Did anyone ever tell you that there was anybody else who worked there that you ought to check out?" The trial court overruled the objection, and the prosecutor refined and repeated the question by asking four additional questions concerning whether anyone told McNorton that she should check on whether there were others who might have been driving the truck at the times of the offenses. After the fourth question, Marek moved for a mistrial, specifically basing the motion on the prosecutor's attempt to show a tacit admission.
In those circumstances, when a litigant makes a motion for a mistrial immediately after the question or questions are asked that are the grounds made the basis of the motion for the mistrial, and the grounds for the motion are clear and definite, then the motion for mistrial will preserve for review lesser prayers for relief, such as an objection or motion to strike. We make this holding because, as we stated earlier, a litigant who requests such drastic relief as a mistrial implicitly requests lesser relief that is proper, in case the greater relief is denied or is found to be improper. To the extent that Hunt v. State, 453 So.2d 1083
(Ala.Cr.App. 1984), Farley v. State, 437 So.2d 639
(Ala.Cr.App. 1983), and the cases relied on therein vary from this holding, see Farley, at 640, they are overruled.
Addressing Marek's first argument, that the proper predicate was not laid for the introduction of a purported tacit admission, we hold that the above-stated line of questions propounded by the state was tantamount to eliciting a tacit admission, which is made when "a statement incriminating [the] accused or charging him with crime is made in his presence and hearing, under circumstances naturally calling for a reply or denial, and he has full liberty to speak"; in such a case "his silence or failure to reply or deny is admissible in evidence as an admission of the statement or accusation; where, on being accused of crime, with full liberty to speak, one remains silent, his failure to reply or to deny is relevant as tending to show his guilt." 22A C.J.S. Criminal Law, § 734(1) at 1068-69 (1961). (Footnotes omitted.) The predicate for admitting a tacit admission is stated in Caldwell v.State, 282 Ala. 713, 213 So.2d 919 (1968), which requires proof of the following:
 1) That defendant must have heard and understood the accusatory statement. *Page 380 
 2) That defendant had an opportunity to deny the accusatory statement, under circumstances calling for a reply.
3) That defendant remained silent.
Our review of the record reveals that the state did not present evidence that Marek was present and that he heard and understood Officer McNorton's statement regarding whether someone other than he should have been investigated for the rape. Instead, the record shows that McNorton spoke with Donald Coram, a partner in Master Manufacturing, and that she learned that Marek regularly drove the truck. The record indicates that, following this conversation, McNorton actuallywaited for Marek to arrive at work, in order to view the truck that Marek drove. Thus, far from indicating that Marek heard and understood any accusatory statement and had the opportunity to deny the statement, the record indicates that Marek was not even present when the relevant conversation occurred. Accordingly, the trial court erred when it allowed McNorton's testimony concerning Marek's silence as a tacit admission of guilt.
Although, primarily because the prosecution could not lay the proper predicate for the alleged tacit admission, we have encountered no difficulty in resolving the issue here presented within the framework of existing law, our review has caused us to reconsider and reevaluate the broader issue of the tacit admission rule and this Court's treatment of that rule.
As we described the rule earlier, it allows an exception to the hearsay rule when an accused hears an accusatory statement and remains silent; the silence of the accused is used as substantive evidence that the accused has impliedly consented to the truth of the accusation and, accordingly, has admitted guilt. Clark v. State, 240 Ala. 65, 197 So. 23 (1940). Based on those premises, both the accusatory statement and the fact that the accused remained silent are admissible.Id. Alabama's rationale for the rule was fully explained in Clark v. State, supra:
 " 'It may be stated as a general rule that, when a statement is made in the presence and hearing of an accused, incriminating in character, and such statement is not denied, contradicted, or objected to by him, both the statement and the fact of his failure to deny are admissible on a criminal trial, as evidence of his acquiescence in its truth. A statement so made, of itself, would be objectionable as hearsay testimony, being a statement made at some time other than at a present trial, offered to prove the truth of the matter therein asserted, and based entirely on the credibility of a declarer not then before the court. However, as in the case of admissions generally, the statements herein considered are not offered as evidence of their truth merely because they were uttered; they are secondary in nature and are accepted in evidence as untainted by the hearsay stigma merely because they are a necessary predicate to the showing of the substantive evidence, the reaction of the accused thereto. The crystallization of the experience of men shows it to be contrary to their nature and habits to permit statements, tending to connect them with actions for which they may suffer punishment, to be made in their presence without objection or denial by them, unless they are repressed by the fact that the statement is true. Consequently, silence under accusation is some evidence from which the jury may infer that the accused acquiesced in the statement and admitted its truth. But silence or failure to deny, of itself, unaccompanied by the statement in the face of which the accused remained silent or which he failed to deny, cannot well be testified to so as to convey meaning. The witness might testify that an incriminating statement was made without stating what it consisted of, but such testimony would be objectionable as a mere conclusion. * * *' "
240 Ala. at 69, 197 at So. 26-27.
Underlying this legal presumption that an accused's silence when he is confronted with an accusation is prompted by his knowledge of his guilt is the premise that *Page 381 
an individual who considers himself innocent will deny such an accusation.
That underlying premise, that an innocent personalways objects when confronted with a baseless accusation, is inappropriately simple, because it does not account for the manifold motivations that an accused may have when, confronted with an accusation, he chooses to remain silent. Confronted with an accusation of a crime, the accused might well remain silent because he is angry, or frightened, or because he thinks he has the right to remain silent that the mass media have so well publicized. Furthermore, without that premise that silence in the face of an accusation means that the accused thinks he is guilty, the tacit admission rule cannot withstand scrutiny, because the observation that the accused remained silent could not necessarily lead to the inference that the accused knew that he was guilty; without the premise that silence in the face of accusation necessarily results from guilt, the tacit admission rule merely describes two concurrent events, accusation and silence, without giving the reason for the concurrence of the two events. Accordingly, neither logic nor common experience any longer supports the tacit admission rule, if, indeed, either ever supported it.
In addition to the problems with the tacit admission rule that we have discussed, the rule faces serious constitutional challenge as well.[1] In Ex parte Harris,387 So.2d 868 (Ala. 1980), the Court addressed the tacit admission rule. Harris was arrested for possessing illegal drugs and was given the Miranda warnings. Miranda v. Arizona,384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). After the warnings were given and while Harris was present, a police officer had a conversation with a woman who identified herself as Harris's aunt. At trial, the prosecution used the police officer's testimony concerning the conversation as evidence of a tacit admission. Harris was convicted, and the Court reversed his conviction. The opinion stated:
 "[W]e are convinced the [testimony] was clearly inadmissible because of Doyle v. Ohio, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976), wherein the Supreme Court of the United States states that
 "[t]he warnings mandated by that case, [Miranda], as a prophylactic means of safeguarding Fifth Amendment rights, see Michigan v. Tucker, 417 U.S. 433, 443-444, 94 S.Ct. 2357, 2363-2364, 41 L.Ed.2d 182 (1974), require that a person taken into custody be advised immediately that he has the right to remain silent, that anything he says may be used against him, and that he has a right to retained or appointed counsel before submitting to interrogation. Silence in the wake of these warnings may be nothing more than the arrestee's exercise of these Miranda
rights. Thus, every post-arrest silence is insolubly ambiguous because of what the State is required to advise the person arrested. See United States v. Hale, supra, 422 U.S. [171], at 177, 95 S.Ct. [2133], at 2137, 45 L.Ed.2d 99 [(1975)]. Moreover, while it is true that the Miranda warnings contain no express assurance that silence will carry no penalty, such assurance is implicit to any person who receives the warnings. In such circumstances, it would be fundamentally unfair and a deprivation of due process to allow the arrested person's silence to be used to impeach an explanation subsequently offered at trial.
"96 S.Ct. 2244-45.
"* * * *
 "The crux of our holding is simply that it is fundamentally unfair and in violation of due process of law to inform a person under arrest that he has a right to remain silent and then permit an inference of guilt from that silence."
387 So.2d at 870.
This holding in Harris, although it abolished the use of tacit admissions occurring after an individual has been given the Miranda warnings, did not expressly abolish *Page 382 
the use of tacit admissions against an accused who had not been given the Miranda warnings before the tacit admission occurred. Accordingly, the use of tacit admissions in cases where the defendant has not been given the Miranda
warnings is arguably distinct from the use of tacit admissions in cases like Harris, where the defendant had been warned, and this distinction could arguably allow the tacit admission to be used in a manner consistent withMiranda and the Fifth Amendment to the United States Constitution.
We find no legitimate basis for such a distinction, however. An individual with the right to remain silent has the right to remain silent without regard to whether an officer has toldhim of that right. For example, assume that an accused is arrested, and that the accused knows his right, guaranteed by the Fifth Amendment and described in Miranda, to be silent. Relying on that right, the accused, not yet having been given the Miranda warnings, remains silent in the face of an accusatory statement. There is no legitimate distinction between that accused's silence and the silence of an accused who has been given his Miranda warnings; the right to remain silent is effective for both of the accuseds, and, regardless of whether the accused is advised of that right, the right nevertheless exists. Accordingly, at a practical level, the use of a tacit admission is as much a violation of an unwarned person's right to remain silent as it would be a violation of a warned person's right, as inHarris.
Considering the logical and constitutional problems inherent in the tacit admission rule, we find that the sole remaining obstacle to the abolition of the rule is stare decisis. Professor Charles Gamble, The Tacit Admission Rule:Unreliable and Unconstitutional, 14 Ga.L.Rev. (1979), quoted Chief Justice Vanderbilt of the New Jersey Supreme Court, who wrote of stare decisis:
 "The doctrine of stare decisis neither renders the courts impotent to correct their past errors nor requires them to adhere blindly to rules that have lost their reason for being. The common law would be sapped of its life blood if stare decisis were to become a god instead of a guide. The doctrine when properly applied operates only to control change, not to prevent it."
Fox v. Snow, 6 N.J. 12, 23, 76 A.2d 877, 883 (1950).
The tacit admission rule, to the extent that the rule allows the introduction of evidence of an accused's silence when confronted with an accusation, is hereby abolished. Although the constitutional impediments of the Fifth Amendment may not apply to a tacit admission occurring before an accused is arrested, Miranda, 384 U.S. at 444, 86 S.Ct. at 1612, the fundamental logical problems with the rule remain. Accordingly, this decision expressly applies to pre-arrest situations, as well as post-arrest situations. This abolition of the rule applies prospectively.
 III
We turn our attention to Marek's final claim of error, which is that the trial court erred in its refusal to give the following jury charge:
 "The State has the burden of proving the guilt of the Defendant beyond a reasonable doubt and this burden remains on the State throughout the case. The Defendant is not required to prove innocence."
Our review of the record reveals that the trial judge gave the following oral instructions in his charge to the jury:
 "Again, I will tell you that it is the law of Alabama that this Defendant entered this courtroom presumed to be innocent of the offense charged against him. And this presumption of innocence attends him as a matter of evidence throughout the trial unless and until the State of Alabama proves his guilt beyond a reasonable doubt. And that's the burden that the State carries: to prove the guilt of a defendant in a criminal proceeding beyond a reasonable doubt.
". . . .
 "I charge you, ladies and gentlemen of the jury, that to sustain the charge of rape in the first degree in this case, the *Page 383 
State by the evidence must prove beyond a reasonable doubt each of the following elements of the offense: one, that the Defendant engaged in sexual intercourse with T.R.; and two, that such sexual intercourse was by means of forcible compulsion."
If a requested charge is subsumed in the court's oral charge, the refusal of the charge is not error. Rule 14, Temp.Ala.R.Cr.P.; see Ex parte Wilhite, 485 So.2d 787
(Ala. 1986). The defendant's requested charge was covered in the court's oral charge.
Because of the error discussed in section II of this opinion, the judgment is due to be reversed and the cause remanded.
REVERSED AND REMANDED.
JONES, ALMON, SHORES and HOUSTON, JJ., concur.
HORNSBY, C.J., concurs in the result.
MADDOX and KENNEDY, JJ., dissent.
[1] Professor Charles Gamble in The Tacit Admission Rule:Unreliable and Unconstitutional, 14 Ga.L.Rev. 1 (1979), raised constitutional challenges.