[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 535 
 ON APPLICATION FOR REHEARING
The opinion released December 28, 1990, is withdrawn. The following becomes the opinion of this Court.
Willie Joe Robinson was convicted of two counts of murder and was sentenced as a habitual offender to life imprisonment without parole. He raises six issues on this appeal of those convictions.
On the evening of March 5, 1989, Kerry Clutts was driving from Huntsville to Birmingham on Interstate 65 South when a blue Mazda pickup truck passed him about two miles past the Cullman-Good Hope interchange. The truck was going about 75 miles per hour and was crowding the lane in which Clutts was driving. When the truck cleared Mr. Clutts's vehicle, it stayed in the middle of the road and then suddenly veered left, careened into a ditch in the median, and "somersaulted" into the oncoming northbound traffic. The pick-up truck struck a white GMC "Blazer-type" vehicle whose occupants, Rickey Shoemake and his wife, Edith, were dead when the paramedics arrived.
Mr. Clutts stopped his vehicle and ran back to the site of the wreck. He saw a slim black male, about five feet ten inches tall, lying next to the driver's side of the blue pickup truck. The man was moaning and saying that a car had "cut him off." Clutts was unable to identify the defendant at trial as the man he observed at the site of the wreck.
Cullman Deputy Sheriff James Douglas Williams arrived about five minutes after the collision. He was the first law enforcement officer at the accident scene. He saw a man, whom he identified at trial as the defendant, leaning against a blue pickup truck. Deputy Williams detected a "very noticeable" odor of alcohol as he helped the defendant to the back seat of his patrol car. Williams asked the defendant whether anyone was with him and the defendant said "[N]o, he was driving, he didn't think anybody was with him, somebody hit him." When the deputy asked the defendant *Page 536 
whether he had been drinking, the defendant said he "thought so."
Cullman Deputy Sheriff Dennis Spradlin remained with the defendant until the defendant was taken by ambulance to the Cullman Medical Center. He testified that the defendant had a strong odor of alcohol, slurred speech, and a "staggerish" walk. The defendant pronounced words incorrectly and gave "vague" responses to Spradlin. In Spradlin's opinion, the defendant was "under the influence."
Phyllis Teague and Bobby Goodwin, members of the ambulance team that transported the defendant to the hospital emergency room, both testified that they noticed an odor of alcohol on the defendant. When Ms. Teague asked the defendant if he had had anything to drink, he replied that he had had two beers.
A blood sample drawn from the defendant at 9:00 p.m., approximately one hour after the collision, showed a blood alcohol level of . 193%. A later sample, drawn from the defendant at 11:30 p.m. the same night, revealed a blood alcohol level of .13%. There was testimony that "[a]lcohol is eliminated in a male at a rate of .15% per hour."
Blood samples were also taken from the bodies of both victims. Rickey Shoemake's blood tested negative for alcohol or drugs. Edith Shoemake's blood sample contained no alcohol, but showed a small level of codeine, consistent with the amount found in a dose of nonprescription cough medicine.
 I
The indictments charged that the defendant
 "did recklessly engage in conduct which manifested extreme indifference to human life and created a grave risk of death to a person other than [the defendant], and did thereby cause the death of Edith Nunnelee Shoemake [and] Rickey Allen Shoemake by operating a motor vehicle while under the influence of alcohol and thereby striking with his vehicle the vehicle in which [the victims] w[ere] occupant[s], in violation of Title 13A-6-2
of the Code of Alabama."
At trial, the defendant moved for a judgment of acquittal, contending on several grounds that the evidence was insufficient to convict him. On appeal, he challenges only the State's proof that he was operating or was in "actual physical control" of the truck which collided with the victims' automobile. He claims the evidence was deficient because: (1) he was not found behind the steering wheel or inside the truck after the wreck; and (2) the only eyewitness to the collision could neither identify him as the individual driving the truck nor eliminate the possibility that the truck had more than one occupant.
The State's evidence of "actual physical control" was sufficient because, if for no other reason, the defendant admitted that "he was driving" to Deputy Williams, the first officer on the scene. The defendant also gave a statement to State Trooper Ricky Dale later that night at the hospital emergency room, which read, in pertinent part:
 "I . . . got on I-65 at Priceville headed south. I remember passing Lacon and got up to the first Cullman exit. I remember seeing a truck stop on the left side of the road. I continued on to the next exit where I observed a car coming onto the Interstate. This vehicle merged in front of me. I downshifted to third and hit my brakes. I remember tumbling or banging around inside the truck. The next thing I remember a lady and a man came up to me as I laid on the ground. A law enforcement officer helped me to a vehicle where I could lay down."
" 'Actual physical control' is determined by a totality-of-the-circumstances test. Cagle v. City of Gadsden,495 So.2d 1144 (Ala. 1986)." Davis v. State, 505 So.2d 1303,1305 (Ala.Cr.App. 1987). " '[P]ositive, direct, or eyewitness testimony is not required.' Moon v. City of Montgomery,536 So.2d 139, 141 (Ala.Cr.App. 1988). See also Bickerstaff v.State, 516 So.2d 800, 801 (Ala. 1987); Cagle, 495 So.2d at 1147;Davis v. State, 505 So.2d [at 1305-06]." McLaney *Page 537 v. City of Montgomery, 570 So.2d 881, 882 (Ala.Cr.App. 1990). Even without the defendant's admissions, the State's evidence was, under a totality-of-the-circumstances test, "inconsistent with any reasonable hypothesis that the defendant [was] innocent." Davis, 505 So.2d at 1305.
 II
The defendant argues that the trial court erred by denying his request for state funds to obtain an independent analysis of his blood samples.
The defendant was initially represented by retained counsel, who entered an appearance on May 2, 1989. On May 9, the defendant's retained attorney filed a number of motions, including a motion for state funds to secure an independent analysis of the defendant's blood samples and a motion to proceed in forma pauperis with a request for the appointment of counsel. On May 9, the trial court entered the following order:
 "Defendant's Motion for Independent Analysis of Blood Sample is granted but the defendant must secure his expert, must examine the blood in the presence of an officer or any person legally in possession, must complete the sampling on or by Monday, May 22, 1989, when the case is set for trial, and must not dissipate all of the blood sample being examined. . . . The Defendant's Motion to Proceed in Forma Pauperis and appointment of counsel is reserved for the further pleading day, Friday, May 19, 1989, after the Defendant files his affidavit under oath of indigency before this judge."
Neither retained nor appointed defense counsel ever objected to this ruling. There was no request that the ruling on the independent analysis at state expense be delayed or reserved until after the ruling on the determination of indigency.
The case was continued from the May trial docket. In late June, retained counsel filed a motion to withdraw for non-payment of his fee. The motion was granted on July 6. The next day, defendant filed an affidavit of indigency, and current counsel was appointed to represent him.
Section 15-12-21(d), Code of Alabama 1975, "clearly authorizes reimbursement for any expense reasonably incurred in the defense of an indigent by a court appointed attorney if such expense is approved in advance by the trial court."Bailey v. State, 421 So.2d 1364, 1367 (Ala.Cr.App. 1982). The court's duty to appoint counsel or to approve expenses is necessarily contingent upon a prior showing of indigency. Here, the trial court had no authority to grant the defendant anything "at state expense" until the defendant had been determined to be and had been declared indigent. See §§15-12-1(1), 15-12-5(c), and 15-12-21, Ala. Code (1975).
After retained counsel withdrew, the defendant filed an affidavit of indigency. He was then determined to be indigent by the trial court and an attorney was appointed to represent him. However, after that determination of indigency, there was no request that the independent analysis be performed at state expense. This motion was simply not pursued and was not brought to the attention of the trial court after the defendant had been declared indigent.
Under the circumstances, the court did not have the statutory authority to approve a request for defense expenses on May 9. Later, when it did have that authority, it was never presented with a request for such expenses. We reject the defendant's speculation that the trial judge would have summarily rejected a later request for funds, since the court granted an October 5 defense request for "Subpoena Duces Tecum for Medical Recordsand for Expenses."
 III
The defendant argues that the prosecutor committed error in commenting on his constitutional right against self-incrimination. We find that this issue was not preserved for review by timely objection.
Decatur police sergeant Noel Mayfield was called as a defense witness. He testified *Page 538 
that at 6:24 p.m. on the evening in question, a blue Mazda pick-up truck almost collided with his police car. Suspecting that the driver was intoxicated, Mayfield stopped the vehicle and asked the driver, whom he identified as the defendant, to step out and walk toward the patrol car. Mayfield was assisted during the stop by Decatur police officers Jackie Sherrill and Jerry Hale. Sergeant Mayfield concluded that the defendant's "motor function seemed to be normal" and that the defendant was not intoxicated. He issued the defendant a citation for driving without a license and released him.
On cross-examination, the assistant district attorney elicited from Sergeant Mayfield the fact that during this stop Officers Sherrill and Hale searched the defendant's vehicle and found one unopened 12-ounce can of beer. On redirect examination by defense counsel, the following occurred:
 "Q. Officer, isn't it a fact that Mr. Robinson [the defendant] consented to the search of his truck?
 "[Assistant District Attorney]: We object to that, Your Honor, unless he puts him on the stand and shows him the form.
 "[Defense Counsel]: He can testify he consented to the search or not, this officer can.
"THE COURT: Overruled. Go ahead."
"Q. [Defense Counsel]: Did he consent?
"THE COURT: Did he consent to the search?
 "A. Sir, I don't know. I personally didn't search the vehicle. I don't know if he gave officer Sherill or officer Hale permission to do so."
(Emphasis added.)
At the conclusion of Sergeant Mayfield's testimony, the trial was recessed for lunch. After the lunch break, the defense rested and court was adjourned for the day. Sometime that day, defense counsel filed a typewritten motion for mistrial, claiming that the emphasized portion of the prosecutor's remarks constituted a prohibited comment on the defendant's Fifth Amendment right not to testify. The motion was denied, without comment, by written order of the trial court the same day. No hearing on the motion appears in the record.
We note that the prosecutor's comment in this case is very similar to the comment condemned in Ex parte Tucker,454 So.2d 552, 553 (Ala. 1984). However, there was no timely objection to the comment in this case.
Prior to Ex parte Marek, 556 So.2d 375 (Ala. 1989), this court would have followed Farley v. State, 437 So.2d 639
(Ala.Cr.App. 1983), and held that defense counsel's failure to object to the prosecutor's comment, at the time it was made, precluded our review, and that the later motion for mistrial did not operate to "preserve the event" for appellate scrutiny.Farley, 437 So.2d at 640.
In Farley, this court held that a motion for mistrial made at the conclusion of a witness's testimony did not preserve the issue of admitting the witness's answer which came in without contemporaneous objection or motion to strike. In that case, we also observed that a motion for mistrial does not "include a motion to strike or exclude testimony as a "lesser prayer for relief." Id.
In Marek, however, the Alabama Supreme Court overruled Farley
and the line of cases upon which Farley relied. The Marek court held:
 "[W]hen a litigant makes a motion for mistrial immediately after the question or questions are asked that are the grounds made the basis of the motion for the mistrial, and the grounds for the motion are clear and definite, then the motion for mistrial will preserve for review lesser prayers for relief, such as an objection or motion to strike."
Marek, 556 So.2d at 379 (emphasis added). The above emphasized language from Marek indicates that a motion for mistrial compensates for the lack of an objection or motion to strike as long as the motion for mistrial follows immediately after the offending question.
Marek does not eliminate the requirement that a motion for mistrial be timely made. We conclude that Marek overruled *Page 539 
only that portion of the Farley opinion which stated that a motion for mistrial is not a substitute for an objection or motion to strike, but left intact that portion of the Farley
decision which held that the motion, made after the witness had testified, was untimely.
Here, the motion for mistrial was interposed not only at the conclusion of the witness's testimony, but also, since the motion was typewritten, probably after the lunch break. We therefore conclude that under the test announced inMarek, the defendant did not preserve this issue for appellate review.
 IV
The defendant claims that the trial court erred by overruling his objections to the following remarks made by the prosecutor in closing argument:
"[ASSISTANT DISTRICT ATTORNEY]:
 "The first thing I want to talk about — [defense counsel] everybody wants to talk about the State of Alabama. That, I guess is referring to Mr. Brooks, Mr. Carlton and myself. You see that is not so. You see there was a Grand Jury back here somewhere. They heard the evidence, some of the evidence that you heard, not to the same degree, but heard the evidence that you have heard and they indicted him —
"[DEFENSE COUNSEL]: We object to that, Your Honor.
"THE COURT: Overruled.
"[ASSISTANT DISTRICT ATTORNEY]:
 "People just like you and they heard the evidence and indicted him. It was not me, I was not at that Grand Jury, neither was Mr. Carlton or anybody else, but people just like you decided to charge the defendant.
"[DEFENSE COUNSEL]: We object to that, Your Honor.
 "THE COURT: Overruled. He has the right to argue the facts to the jury, I'll tell them about the Grand Jury. You know this, [defense counsel]. Don't interrupt again on that issue. Excuse me."
The defendant claims that the prosecutor's comments were improper because they constituted an argument based on facts not in evidence. He also maintains that the remarks about the grand jury were confusing to the jury because the trial court, when it overruled his objection, stated that "[the prosecutor] has the right to argue the facts to the jury," yet later instructed the jury that "the indictments are not evidence . . . to consider ever." We agree with both arguments. The trial court might also have agreed, had it been apprised of these arguments. Defense counsel, however, stated no grounds in making the objections.
In Wilson v. State, 52 Ala. App. 680, 683, 296 So.2d 774, 776, cert. denied, 292 Ala. 759, 296 So.2d 778, cert. denied,419 U.S. 845, 95 S.Ct. 79, 42 L.Ed.2d 73 (1974), the district attorney, in his closing argument, referred to "the indictment, which was brought by eighteen men and women just like you." Holding that defense counsel's statement, "I object to that," did not preserve the issue for review, this court observed: "An objection in proper form would have been subject to being sustained. An indictment is not evidence and it is extraneous to the trial thereof to refer to how and by whom the indictment came into being." Wilson, 52 Ala. App. at 683, 296 So.2d at 776.
The defendant attempts to distinguish Wilson by maintaining that in this case the trial court's observation that the prosecutor had the right "to argue the facts to the jury . . . ma[d]e clear the basis for the objection." The trial court'serroneous observation, however, did not "make clear the basis for the objection"; it highlighted the very necessity for stating the basis of the objection. As in Wilson, defense counsel here simply did not apprise the trial judge of the reason the prosecutor's argument was objectionable, and she did not properly preserve the error for review.
 V
The trial judge charged the jury on the lesser included offenses of manslaughter, criminally negligent homicide, and vehicular *Page 540 
homicide. The defendant claims that the court's instruction on manslaughter was erroneous because it omitted the word "recklessly" before the word "caused," and because it failed to redefine the element of "recklessness," which had been covered in the instruction on reckless murder.
The conclusion of the court's charge on murder and the entirety of the court's charge on manslaughter is as follows:
 "Under this statute [§ 13A-6-2(a)(2) reckless murder] I instruct you that a person acts recklessly with respect to a result or to a circumstance described by a statute defining an offense when he is aware of and consciously disregards a substantial and unjustifiable risk that the result will occur or that the circumstance exists. The risk must be of such nature and degree that disregard of it constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation.
 "A person who creates a risk but is unaware thereof solely by reason of voluntary intoxication acts recklessly with respect thereto. That is the definition statutorily of murder by vehicle.
 "What, under the present Alabama law is the definition of manslaughter, the first lesser included offense? A person commits the crime of manslaughter if he acts recklessly or if he recklessly causes the death of another person. To sustain the charge of manslaughter in this case the State by the evidence must prove beyond a reasonable doubt each of the following elements of the offense: That Mr. and Mrs. Shoemake are dead; that the Defendant Mr. Robinson caused the death of the deceaseds, that is, that they died as a result of the actions of the defendant in and about the operation of his vehicle at the time and place on Interstate 65 in Cullman County." (Emphasis added).
Although the trial court correctly phrased the instruction, "recklessly causes," the first time it referred to the crime of manslaughter, it omitted the word "recklessly" before the word "caused" at the end of the manslaughter charge. "The rule is well established that where a portion of the oral charge is erroneous, the whole charge may be looked to and the entire charge must be construed together to see if there be reversible error." Gosa v. State, 273 Ala. 346, 350, 139 So.2d 321, 324
(1961).
Although the better practice would have been to redefine recklessness as it related to the crime of manslaughter, the trial court's failure to do so here did not constitute reversible error. Since the court had, immediately preceding the manslaughter instruction, explained recklessness, the omission of the definition, "when read with the surrounding remarks by the court, was not prejudicial and did not warrant a reversal." Morrison v. State, 398 So.2d 730, 746
(Ala.Cr.App. 1979), reversed on other grounds, 398 So.2d 751
(Ala. 1981). " 'An instruction explanatory of another charge should be considered in connection therewith; and if, when considered together, they assert a correct proposition, the judgment will not be reversed, though the explanatory charge, as a separate and disconnected instruction, may not express all the elements of the proposition.' Johnson v. State, 81 Ala. 54,1 So. 573, 574 (1886)." Williams v. State, 538 So.2d 1250, 1252
(Ala.Cr.App. 1988). After a review of the entire oral charge of the trial court, we are convinced that the jury was not misled by the court's instructions.
 VI
The defendant argues that trial court went "outside of the indictment" in charging the jury on the rules of the road and on the issues of speed and reckless driving.
In its charge on criminally negligent homicide, the court instructed the jury that it could consider various rules of the road, including "reasonable and prudent speed," "maximum speed limits," and "reckless driving," to determine whether the rules were applicable and were violated, and if so, whether any violation constituted criminal negligence and proximately caused the deaths of the victims in this case. The *Page 541 
court prefaced its instruction on the rules of the road with the following remarks:
 "I'll read you shortly some of the laws of the State of Alabama relating to the operation of vehicles on highways, including interstate highways, and you may consider those statutory rules and regulations to help you test the facts in this case on all charges including this one of criminally negligent homicide." (Emphasis added).
The defendant insists that the emphasized portion of the charge was error because it instructed the jury that they could, in determining whether the defendant was guilty of murder, base their finding of recklessness on conduct (such as speeding) which was not charged in the indictment.
Citing Ex parte Hightower, 443 So.2d 1272, 1274 (Ala. 1983), the defendant argues that because the indictment charged that he committed murder "by operating a motor vehicle while under the influence of alcohol," the court's instruction authorized the jury to find him guilty of "the same crime under a different set of facts [and] deprive[d] him of that notice to which he [was] constitutionally entitled." (Emphasis omitted.) This issue has not been preserved for review.
At the conclusion of the court's oral charge, defense counsel objected "to the instructions on reasonable prudent speed, maximum speed limits and reckless driving in that the indictment charges the violation of driving under the influence." This objection did not focus the trial court's attention on the specific impropriety raised on appeal, i.e., that the court had incorporated this instruction into the instructions on murder by his use of the phrase "on all charges," and that this instruction, as it related to theoffense of murder, was at variance with the material allegations of the indictment.
Although the court's rules-of-the-road instruction was arguably improper in relation to the offense of murder, it is clear that the instruction was proper in relation to the offense of criminally negligent homicide. Section 13A-6-4(b) provides that "[t]he jury may consider statutes and ordinances regulating the actor's conduct in determining whether he is culpably negligent under subsection (a) of this section."
 " 'If parts of the charge are objectionable, it is incumbent upon the defendant to specifically point out the objectionable parts.' Fuller v. State, 269 Ala. 312, 324, 113 So.2d 153
(1959), cert. denied, Fuller v. Alabama, 361 U.S. 936, 80 S.Ct. 380, 4 L.Ed.2d 358 (1960) (emphasis added). If any part of an instruction is bad, the accused has a duty, in objecting, to separate the bad part from the good. Treadwell v. State, 168 Ala. 96, 53 So. 290, 292 (1910). 'The reason for our rule that the exception be specific is to allow the judge to correct his error, if any, and to do so his approximate language should be quoted to him.' Orr v. State, 40 Ala. App. 45, 57, 111 So.2d 627 (1958), affirmed, 269 Ala. 176, 111 So.2d 639
(1959). 'An objection to an oral charge must be specific and must clearly delineate the perceived defect. . . .' "
Kyser v. State, 513 So.2d 68, 72 (Ala.Cr.App. 1987).
Furthermore, we note that the case of Jones v. State,21 Ala. App. 234, 109 So. 189 (1926), wherein the defendant was convicted of murder in the first degree, involved a similar issue. The appellate court held:
 "The trial court did not err in reading to the jury that part of the ordinances of Birmingham regulating the operating of motor vehicles in said city. One of the questions involved in the inquiry incident to this prosecution was the gross negligence of the defendant in operating the automobile driven by him. If defendant was driving the automobile in violation of the city ordinance, that fact should be considered on the question of gross negligence."
Jones, 21 Ala. App. at 236, 109 So. at 191.
The judgment of the Cullman Circuit Court is affirmed. The defendant's application for rehearing is overruled.
ORIGINAL OPINION WITHDRAWN;
OPINION SUBSTITUTED; *Page 542 
APPLICATION FOR REHEARING OVERRULED;
AFFIRMED.
All Judges concur.