The appellant, Carla Menefee, was separately indicted for trafficking in cocaine and for possession of marijuana in the second degree. The indictments were consolidated for trial and the appellant was convicted of both offenses. On the trafficking offense, her sentence of ten years' imprisonment was split, with three years to serve and two years on probation. On the possession offense, she was sentenced to imprisonment for a year and a day, to be served concurrently with the sentence imposed in the trafficking case. On this appeal from those convictions, the appellant raises three issues.
 I
In response to questioning by Midfield Police Officer James B. Miller at the time of the execution of the search warrant, the appellant admitted that the apartment where the search warrant was executed "was hers" and that "she lived there." The appellant argued at trial and she now claims on appeal that the State did not establish a proper predicate regarding the voluntariness of her statement before introducing it into evidence. Specifically, she argues that the State failed to ask Officer Miller whether anyone told the appellant "it would be better or worse for her if she did or didn't make a statement." (R. 120-21.)
The voluntariness of an inculpatory statement is determined by viewing the totality of the circumstances. Perryman v.State, 558 So.2d 972, 978 (Ala.Cr.App. 1989). Here, Officer Miller testified that he read the Miranda warnings to all those present at the time of the search, including the appellant. According to Miller, the appellant said that she understood her rights and she talked "voluntarily." (R. 119.) Miller made no promises to the appellant, (R. 122), nor did he use "any threats or coercion or force" to induce the appellant to talk. (R. 119.)
Officer Miller asked the appellant whether she lived in the apartment. At first she replied that she did not. Then, after the officers found a utility bill addressed to "Lenette Menefee," Miller asked the appellant who Lenette Menefee was. The appellant stated that was "her mother, but the apartment was hers" (R. 45) and that "she [the appellant] lived there." (R. 120.) Under a totality of the circumstances analysis, the confession was shown to be voluntary, despite the fact that Miller did not initially ask the specific predicate question raised by the appellant.
 "Confessions of guilt can not be received as evidence, unless they appear to have been voluntary. Whether they are voluntary, it is the duty of the court to determine, after a careful consideration of the age, situation and character of the accused, and the circumstances under which they are made. When all these are considered, if it satisfactorily appears that they spring from the volition of the accused, and there is an absence of evidence that any person had exerted an influence to induce them, it is not necessary the witness proving them should be inquired of, whether he or any other person had told the prisoner it would be better for him to confess, or worse if he did not."
McAdory v. State, 62 Ala. 154, 161-62 (1878).
Moreover, immediately after the appellant objected to the State's failure to establish a proper predicate, the prosecutor inquired of Officer Miller, "Did you tell her it would be better for her to talk than be *Page 644 
quiet," and Miller replied, "No, sir." (R. 122.) Where "evidence is admitted without required preliminary proof, if followed by such proof or predicate, the error is cured."Lockett v. State, 218 Ala. 40, 43, 117 So. 457, 459 (1928).
 II
The appellant argues that the State's evidence does not support her conviction.
In order to sustain a conviction for possession of controlled substances, there must be sufficient evidence of either actual or constructive possession. Radke v. State, 52 Ala. App. 397,293 So.2d 312 (1973), affirmed, 292 Ala. 290, 293 So.2d 314
(1974). "Just as the mere presence of a person at the time and place of a crime is not sufficient to justify a conviction for the commission of that crime, . . . so the mere presence of the accused in a place where a controlled substance is found is not in and of itself evidence of possession." German v. State,429 So.2d 1138, 1140 (Ala.Cr.App. 1982).
Because the appellant was not in actual possession of either the marijuana or the cocaine seized during the execution of the search warrant, the State was required to prove her constructive possession of the contraband.
 "When constructive possession is relied on, the prosecution must also prove beyond a reasonable doubt that the accused had knowledge of the presence of the controlled substances. Campbell v. State [439 So.2d 718 (Ala.Cr.App.), rev'd on other grounds, 439 So.2d 723 (Ala. 1983)]; Yarbrough v. State, 405 So.2d 721 (Ala.Cr.App. 1981), cert. denied, 405 So.2d 725 (Ala. 1981). This knowledge may be inferred from the accused's exclusive possession, ownership, and control of the premises. Temple v. State, 366 So.2d 740
(Ala.Cr.App. 1978). When the accused is not in exclusive possession of the premises, however, this knowledge may not be inferred unless there are other circumstances tending to buttress this inference. Korreckt v. State, 507 So.2d 558
(Ala.Cr.App. 1986); Temple v. State[, 366 So.2d at 743]. While non-exclusive possession may raise a suspicion that all the occupants had knowledge of the contraband found, a mere suspicion is not enough. Some evidence that connects a defendant with the contraband is required. Grubbs v. State, 462 So.2d 995 (Ala.Cr.App. 1984); Temple v. State."
Robinette v. State, 531 So.2d 682, 686 (Ala.Cr.App. 1987), reversed on other grounds, 531 So.2d 697 (Ala. 1988). See alsoEx parte Harper, [Ms. 1901019, September 27, 1991], 1991 WL 189276 (Ala. 1991).
When the officers executing the warrant entered the apartment, there were nine people present: the appellant, Derrick Shuford, Marvin Evans, Arnold Bonner, Rhonda Peake, and four others. As the officers entered the front door, one of the occupants attempted to push the door closed, and several others tried to run out the back door. Marvin Evans dashed to the bathroom and attempted to flush some marijuana down the toilet.
Officer Miller testified that when he entered the apartment the appellant was seated on the bed in the left rear bedroom. The marijuana was found in a purse hanging on the doorknob of the door to that bedroom. The purse also contained a handgun. The cocaine was found in four plastic sandwich bags located on top of and in the first drawer of a dresser in the same bedroom. A utility bill addressed to Lenette Menefee, a pistol, and a bullet were also found on top of the dresser. The drawer in which cocaine was found also contained documents and mail addressed to Derrick Shuford. Both men's and women's clothes were hanging in the bedroom closet. The officers found $1000 in cash in Shuford's pocket, $50 on the floor next to Shuford, $66 in Marvin Evans's pocket, and $80 on a table in the living room.
The purse in which the marijuana was found contained personal papers and documents bearing the appellant's name. This evidence alone was sufficient to make the appellant's possession of marijuana a jury question. See Lockett v. State,489 So.2d 653, 659 (Ala.Cr.App.), cert. denied, *Page 645 479 U.S. 850, 107 S.Ct. 177, 93 L.Ed.2d 113 (1986). At trial, the appellant acknowledged that the purse was hers, but she claimed that one of the other people present in the apartment must have "planted" the marijuana in her purse before the search. This is a jury argument and is not a ground for reversal on appeal. Rejecting a similar argument in Levett v. State, 593 So.2d 130
(Ala.Cr.App. 1991), this Court observed, "The State's evidence was sufficient to present a prima facie case of possession of controlled substances. Whether or not someone else placed the cocaine in the appellant's pocket was a jury question." 593 So.2d at 134.
The State's evidence linking the appellant to the cocaine in and on the bedroom dresser is not as strong as the evidence linking her to the possession of the marijuana in her purse. Nevertheless, it too was sufficient to present a jury question.
The officers executing the search warrant saw a box of baking soda, a razor blade, and some empty plastic sandwich bags in plain view on the kitchen counter. The fact that these items, which the State's evidence established were standard "accouterments of drug trafficking," see Segura v. UnitedStates, 468 U.S. 796, 801, 104 S.Ct. 3380, 3383, 82 L.Ed.2d 599
(1984), used in the manufacture of crack cocaine, were found in the kitchen, a common area of the apartment, implies that those in the residence at the time of the search knew that a drug operation was taking place there. " '[T]he voluntary presence of the accused in an area obviously devoted to preparation of drugs for distribution is a circumstance potently indicative of his involvement in the operation.' [United States v.] Staten, 581 F.2d [878, 885 n. 67, (U.S.App.D.C. 1978),] citing UnitedStates v. Davis, 183 U.S.App.D.C. 162, 562 F.2d 681 (1977)."German v. State, 429 So.2d 1138, 1142 (Ala.Cr.App. 1982). "[P]roximity to illegal drugs, . . . presence on the property where they are located, or . . . association . . . with persons who do control" the drugs may be sufficient to support a finding of possession when accompanied "with testimony connecting the [accused] with the incriminating surrounding circumstances." United States v. Ratcliffe, 550 F.2d 431, 434
(9th Cir. 1976), cited in German v. State, 429 So.2d at 1142.
The presence of a handgun in the appellant's purse, another firearm openly visible on the dresser, and a large amount of cash in the apartment also strengthens the inference that the appellant knew of and was participating in an ongoing drug operation. Firearms and large amounts of cash are "routinely found in places where drug dealing occurs," Toney v. State,572 So.2d 1308, 1315 (Ala.Cr.App. 1990). See also Robinette v.State, 531 So.2d 697, 699 (Ala. 1988).
The fact that at the time of the search the appellant was found on the bed in the same room with the cocaine is also a circumstance pointing to her guilt of constructive possession of the cocaine. "[P]hysical proximity to the contraband is relevant" to show constructive possession. Nobles v. State,568 So.2d 318, 319 (Ala.Cr.App. 1990). "While mere proximity to contraband is not enough to establish constructive possession, 'where other circumstantial evidence . . . is sufficiently probative, proximity to contraband coupled with inferred knowledge of its presence will support a finding of guilt on such charges.' " German v. State, 429 So.2d at 1143, quotingUnited States v. Whitmire, 595 F.2d 1303, 1316 (5th Cir. 1979), cert. denied, 448 U.S. 906, 100 S.Ct. 3048, 65 L.Ed.2d 1136
(1980).
Other circumstantial evidence pointing to the appellant's guilt consists of the fact that she at first denied, then admitted, that the apartment "was hers" and that "she lived there." "The accused's knowledge of the presence of the controlled substance may be proved by 'his declarations, or admissions, and contradictory statements, and explanations made by him.' " Shaneyfelt v. State, 494 So.2d 804, 806 (Ala.Cr.App. 1986) (quoting Lyons v. State, 455 So.2d 295, 296 (Ala.Cr.App. 1984)).
At trial, the appellant testified that she did not live at the apartment where the search warrant was executed. She admitted that the apartment was leased in her mother's name, but she maintained that her *Page 646 
mother had leased the apartment for the benefit of Marvin Evans, the appellant's boyfriend. The appellant claimed that she was merely visiting Marvin Evans on the day of the search and that she had no knowledge of the presence of controlled substances on the premises. The appellant testified that the women's clothes in the bedroom closet were not hers. She maintained that the garments were not her size and belonged instead to Rhonda Peake.
Defense witness Derrick Shuford, who admitted to three prior drug convictions, including one for trafficking in cocaine, testified that neither he nor the appellant lived in the apartment. Shuford stated that he "had been keeping cocaine" at the apartment and that all of the cocaine found during the execution of the search warrant in this case belonged to him. He maintained that the appellant "didn't have anything to do with that." (R. 215.) According to Shuford, those who "stayed" at the apartment were Marvin Evans, the appellant's boyfriend, as well as Arnold Bonner and his girlfriend Rhonda Peake. Shuford said that Bonner and Peake occupied the bedroom where the controlled substances were found. Rhonda Peake also testified that that bedroom belonged to her and Arnold Bonner.
From the fact that the appellant's purse was hanging on the doorknob of the door to the bedroom in which the cocaine was found, the jury was entitled to infer that the appellant enjoyed access to that room and treated it as her own, and to disbelieve the appellant's testimony on this point. CompareLockett v. State, 489 So.2d at 659 (wherein this court observed that the fact that the accused's wallet was in a pair of trousers in the bedroom of an apartment where contraband was found was evidence from which the accused's ownership of the contraband could be inferred).
The State's evidence of the appellant's presence in the bedroom with the controlled substances, coupled with other incriminating facts, was sufficient to establish a prima facie case of constructive possession. See Finch v. State,553 So.2d 685 (Ala.Cr.App. 1989). The defense evidence regarding who actually slept in the bedroom where the contraband was found was elicited after the State presented its case-in-chief and presented a question of fact for the jury to resolve. "[W]hen the presence of the accused at the scene is established and evidence of his knowledge of the presence of the prohibited substance is shown, along with any other incriminating evidence, the issue of the defendant's guilt should be submitted to the jury." Radke v. State, 292 Ala. 290, 292,293 So.2d 314, 316 (1974).
 III
The appellant contends that the trial court erred by overruling her motion for mistrial when the assistant district attorney referred to the fact that she had previously applied for youthful offender status. That issue has not been preserved for review.
On direct examination, defense witness Derrick Shuford maintained that the instant trial was the first opportunity he had been given since his arrest to tell anyone in authority that the appellant was not involved in drugs. Then, on cross-examination of Shuford, the following occurred:
 "Q. [ASSISTANT DISTRICT ATTORNEY]: On the 3rd of August, are you aware that [the appellant] had a hearing up here for youthful offender? I'm sorry. Not the 3rd of August but the 14th of September, she had a hearing for youthful offender?
"A. [SHUFORD]: Was I aware?
"Q. Yes.
"A. Yes, sir, I was.
 "[DEFENSE COUNSEL]: We object to that, Your Honor. It's irrelevant.
 "THE COURT: Why is it relevant? I don't think —
 "[ASSISTANT DISTRICT ATTORNEY]: Your Honor, I don't believe a word [Shuford] said and
"[DEFENSE COUNSEL]: Judge, we object to that.
 "THE COURT: I'm not asking you who you believe. I don't think the status of youthful offender has anything to do with this case.
 "[ASSISTANT DISTRICT ATTORNEY]: The next question will make it relevant. *Page 647 
"THE COURT: Well, I think it's immaterial.
 [The appellant] is up here being charged. She isn't a youthful offender. . . .
 [T]here was no occasion for him to speak out on the youthful offender status." (R. 271-73).
At the conclusion of the next witness's testimony, defense counsel moved for a mistrial, claiming that the prosecutor's question "brought to the jury's knowledge that this defendant has applied for [and was not granted] youthful offender" status. (R. 308.) In overruling that motion, the trial court observed, "I doubt anyone on the jury knows what a youthful offender is, let alone the consequences." (R. 309.)
"In Farley [v. State, 437 So.2d 639, 640 (Ala.Cr.App. 1983)], this court held that a motion for mistrial made at the conclusion of a witness's testimony did not preserve the issue of admitting the witness's answer which came in without contemporaneous objection or motion to strike." Robinson v.State, 584 So.2d 533, 538 (Ala.Cr.App.), cert. quashed,584 So.2d 542 (Ala. 1991). Here, as in Farley, defense counsel failed to interpose a timely objection when the question was asked, and failed to move that the answer be stricken. The motion for mistrial, which was not made until after the next
witness had testified, was untimely and simply did not "preserve the event" for appellate scrutiny. Farley, 437 So.2d at 640.[1]
The judgments of the circuit court are affirmed.
AFFIRMED.
All Judges concur.
[1] Farley also held that the later motion for mistrial did not "include a motion to strike or exclude testimony as a lesser prayer for relief." 437 So.2d at 640. Farley and the line of cases upon which it relied were expressly overruled by Ex parteMarek, 556 So.2d 375 (Ala. 1989). However, "Marek overruled only that portion of the Farley opinion which stated that a motion for mistrial is not a substitute for an objection or motion to strike, [and] left intact that portion of the Farley
decision which held that the motion [for mistrial], made after
the witness had testified, was untimely." Robinson v. State, 584 So.2d at 538-39.