The appellant, Calvy Rutherford, was indicted for the capital offense of murder committed during the course of a burglary in the first degree, in violation of § 13A-5-40(a)(4), Code of Alabama 1975. He was convicted by a jury of the lesser-included offense of manslaughter, a violation of § 13A-6-3, and was sentenced to 20 years' imprisonment. He raises five issues on appeal; however, because we reverse, we address only those issues that may arise upon retrial.
 I
The appellant argues that the trial court erred by denying his motion to dismiss the indictment because the process of selecting of grand jury forepersons in Russell County is racially discriminatory. While this issue is not preserved for review, the trial court ruled on the merits, and the state failed to object to the untimeliness of the motion; therefore, this court cannot rely on a procedural bar to dispose of this issue.[1] Ex parte Williams, 571 So.2d 987 (Ala. 1990). *Page 1279 
At the hearing on this motion, the appellant presented testimony from Devon Kiker, the Circuit Clerk of Russell County. Kiker has held that position since 1968. When asked how many blacks have served as forepersons of grand juries since 1963, he answered, "There were two that we could ascertain." He testified that the foreperson is usually selected by the judge, who may consult with the clerk and/or the district attorney. The trial court stated for the record that he would consult with the clerk if he did not know anyone on the grand jury. Kiker further testified that grand jurors were selected randomly by driver's licenses. Russell County's grand jury convened twice a year until 1982, when it began convening three times a year. It convened four times in 1990. Kiker also testified that he did not know whether people without driver's licenses would be on the list or whether more whites than blacks had driver's licenses. The trial judge also stated for the record that he randomly selected the foreperson when he did not know anyone on the grand jury.
The appellant introduced into evidence an incomplete list of the grand jury forepersons since 1963 provided by Kiker. The list does not list the names of the foreperson for some grand juries, has others crossed out, and has question marks by others.
The United States Supreme Court has addressed the issue of racial discrimination in the grand jury context and has held as follows:
 [I]n order to show that an equal protection violation has occurred in the context of grand jury selection, the defendant must show that the procedure employed resulted in substantial underrepresentation of his race or of the identifiable group to which he belongs. The first step is to establish that the group is one which is a recognizable, distinct class, singled out for different treatment under the laws, as written or as applied. Hernandez v. Texas, 347 U.S. [475], . . . 47879 [74 S.Ct. 667, 670-71, 98 L.Ed. 866 (1954)]. Next, the degree of underrepresentation must be proved, by comparing the proportion of the group in the total population to the proportion called to serve as grand jurors, over a significant period of time. Id., at 480 [74 S.Ct. at 671]. See Norris v. Alabama, 294 U.S. 587
[55 S.Ct. 579, 79 L.Ed. 1074] (1935). This method of proof, sometimes called the 'rule of exclusion,' has been held to be available as a method of proving discrimination in jury selection against a delineated class. Hernandez v. Texas, 347 U.S., at 480 [74 S.Ct. at 671]. Finally, as noted above, a selection procedure that is susceptible of abuse or is not racially neutral supports the presumption of discrimination raised by the statistical showing. Washington v. Davis, 426 U.S. [229, 96 S.Ct. 2040, 48 L.Ed.2d 597
(1976)], . . . [at] 241 [96 S.Ct. at 2048]; Alexander v. Louisiana, 405 U.S. [625] . . ., 630 [S.Ct. 1221, 1225, 31 L.Ed.2d 536
(1972)].
Castaneda v. Partida, 430 U.S. 482, 494,97 S.Ct. 1272, 1280, 51 L.Ed.2d 498 (1977) e(footnote omitted). InRose v. Mitchell, 443 U.S. 545, 99 S.Ct. 2993,61 L.Ed.2d 739 (1979), the Court extended Castaneda to racial discrimination in the selection of the foreperson of the grand jury and held, "Only if respondents [establish] a prima facie case of discrimination in the selection of the foreman in accord with [Castaneda], [does] the burden shift to the State to rebut that prima facie case." Id.443 U.S. at 565, 99 S.Ct. at 3005 (citing Castaneda,430 U.S. at 495, 97 S.Ct. at 1280).
It is without question that blacks "are members of a group recognizable as a distinct class capable of being singled out for different treatment under the laws." Id. The appellant, however, failed to introduce sufficient evidence from which the degree of underrepresentation could be proved; he failed to introduce evidence of the proportion of the group in the total population to the proportion selected as forepersons. The list of forepersons submitted by the appellant was not a complete list of the names of forepersons and the race of those forepersons listed is not ascertainable. In this case, like Rose, "there is no evidence in the record of the number of foremen appointed, [and] it is not possible to perform the calculations and comparisons needed to *Page 1280 
permit a court to conclude that a statistical case of discrimination had been made out . . . [; therefore,] proof under the rule of exclusion fails." Id. at 572,99 S.Ct. at 3008. The appellant's evidence did, however, cover a "significant period of time." The method of selecting the foreperson, one "that is susceptible of abuse," may have supported "the presumption of discrimination raised by the statistical showing," had one been made, Castaneda,430 U.S. at 494, 97 S.Ct. at 1280.
Thus, the appellant failed to prove a prima facie case of discrimination in the selection of the foreperson of the grand jury; therefore, the trial court did not err by denying his motion to dismiss the indictment on this ground.
 II
The appellant argues that the trial court erred by denying his motion to dismiss the indictment because of "grand jury irregularities." The first of the alleged irregularities was that an investigator from the district attorney's office was present during the presentation of evidence before the grand jury. The investigator was operating a video camera, which was taping only the witnesses and evidence presented. A.R.Cr.P. 12.6 authorizes certain persons to be present during grand jury proceedings and reads as follows:
 "No other person other than the grand jurors, the witnesses under examination, the district attorneys or assistant district attorneys, or others authorized by law to present evidence to the grand jury, a grand jury reporter or stenographer, and an interpreter, if any, shall be present during sessions of the grand jury; provided, however, that this rule shall not be construed as a prohibiting the use of sound recording devices by the district attorney while witnesses are giving their testimony before the grand jury. No person other than the grand jurors shall be present during their deliberations and voting."
The Committee Comments to Rule 12.6 note, "Although the rule excluding unauthorized persons from grand jury sessions is to be strictly adhered to, there appears to be no sanction for its violation, absent a showing of prejudice to the accused." The Alabama Supreme Court has also expressed this view as follows:
 " 'The prevailing view, apart from statutes expressly affecting the question, is that the presence of an unauthorized person during grand jury proceedings, is at most, a mere irregularity, not sufficient to constitute a ground for setting aside the indictment returned by the grand jury, unless prejudice to the accused is shown.' "
In re State ex rel. Baxley v. Strawbridge, 292 Ala. 506,507, 296 So.2d 784, 784 (1974) (quoting 4 A.L.R.2d at 395). Thus, because the appellant failed to make a showing of prejudice, the trial court did not err by denying his motion to dismiss the indictment on this ground.
The appellant argues that the second "grand jury irregularity" was that the district attorney expressed his opinion that the appellant be indicted. He contends that §12-16-209, Code of Alabama 1975, prohibits such an expression of opinion. Section 12-16-209, however, prohibits thepresence of the district attorney at theexpression of the grand jurors's opinions or the giving of their votes.[2] He has cited no other authority for his contention. The appellant's argument is without merit.
 III
The appellant argues that the trial court erred by allowing the appellant's wife to testify regarding "prior difficulties" with the appellant. The appellant moved in limine, by written motion filed in open court, to prevent the state from introducing evidence of two incidents between him and his *Page 1281 
wife, Janice Rutherford. One incident involved the appellant allegedly damaging her car, and the other involved him allegedly threatening her at a grocery store. The trial court denied his motion and stated, "Certainly, please object any time at the point of trial you think there is something inadmissible coming on."
As the state examined Janice Rutherford regarding the automobile incident, the following occurred:
 "A He came to the car and he asked me to take him to the bus terminal to get his belongings and I told him I wasn't taking him anywhere, and he just went around tearing the car (phonetic); threw a brick through a window.
 "Q When you say he, you mean, the defendant did that?
"A Calvy. Yes.
"MR. HARRISON: Your honor, we object.
"THE COURT: Overruled.
"MR. HARRISON: The response previously stated.
"THE COURT: Overruled."
The state then elicited specific details of the incident. When the state began to examine her regarding the grocery store incident, the following occurred:
 "Q Do you recall an occasion in late May or early June when you saw the defendant at a supermarket in town[?]
"A Yes.
 "MR. HARRISON: Your honor, we object for the same reasons previously stated.
"THE COURT: Overruled."
The state then elicited the specific details of the incident during which the appellant allegedly told Janice Rutherford, "Something like 'bitch, I am going to kill you.' "
The state argues that these issues are not preserved for our review because review on appeal is limited to the grounds raised at trial. It is, however, obvious from the record that the appellant was referring to the grounds stated during the argument of his motion in limine; therefore, these issues are preserved in that respect.
The appellant's issue regarding the details of the automobile damage incident, however, is procedurally barred because the appellant's objection was untimely as it was made after the witness had answered the question, and the appellant did not move to exclude the answer. Hunt v. State,453 So.2d 1083 (Ala.Cr.App. 1984), overruled on other grounds, Exparte Marek, 556 So.2d 375 (Ala. 1989). Also, the appellant failed to object to the state's eliciting further details of the incident, and thus, has waived any argument based on the state's eliciting those details. See Maul v.State, 531 So.2d 35 (Ala.Cr.App. 1987) (failure to object waives issue).
The appellant's issue regarding the admission of evidence of threats made by him to Janice Rutherford is preserved for our review, and therefore, we will address the merits of that argument. We note that the state, in brief, argues only preservation and fails to address the merits of this argument. "Evidence is relevant 'if there is any logical relationship between it and the ultimate inference . . . for which it is offered.' " Wilson v. State, 584 So.2d 921, 923
(Ala.Cr.App. 1991) (quoting C. Gamble, McElroy's AlabamaEvidence, § 21.01(1) (3rd ed. 1991)). The evidence of threats to the appellant's wife one month prior to the present offense is simply not relevant in the prosecution for the murder of her "friend," about whom the appellant apparently had no knowledge. "It is recognized generally in Alabama that the trial court may exclude even relevant evidence when it would serve comparatively little or no purpose except to arouse the passion, prejudice or sympathy of the jury." McElroy's
at § 21.01(4). This evidence had no purpose other than to arouse the passion or prejudice of the jury. Furthermore, "collateral acts of a litigant are generally inadmissible when offered to prove that the litigant was of a particular character and acted consistent therewith on the occasion in question." McElroy's at § 26.01(1) (footnote omitted).
Thus, because the trial court failed to exclude evidence of the threats, which had no relevance to the case to be tried, the *Page 1282 
judgment must be reversed and the case remanded for a new trial.
REVERSED AND REMANDED.
All Judges concur.
[1] A.R.Cr.P. 12.9 provides for challenges to indictments. An indictment maybe challenged after issuance but before arraignment. "Objection to commencement of the proceedings including a grand jury proceeding must be made before trial under Rule 15.2(a) [by pre-trial motion], thus the motion must be filed before a plea is entered under Rule 15.3(a), unless a later filing is permitted by the court." If, however, counsel is not appointed until the time of arraignment, then the trial court should give a "reasonable time within which to file the motion." In this case, the appellant's counsel was appointed at the time of arraignment, but the motion to dismiss was not filed until almost 11 months after arraignment, and therefore, is untimely.
[2] Section 12-16-209 reads as follows:
 "The district attorney must attend before the grand jury when required by them, and he may do so whenever he sees fit for the purpose of examining witnesses in their presence or giving them legal advice as to any matter connected with their duties; and he may appear before them at any time to give any information as to any matter cognizable by them, but he must not be present at the expression of their opinions or the giving of their votes on any matter before them."