Harris was convicted of illegally possessing drugs. The Court of Criminal Appeals affirmed the judgment in Harris v. State
[Ms. Sept. 4, 1979] 387 So.2d 865 (Ala.Cr.App. 1979). This Court granted certiorari to determine whether a certain statement by a person not in court was properly admitted into evidence as an exception to the hearsay rule. We have determined that the statement was improperly admitted and reverse the judgment of the Court of Criminal Appeals.
Police officers of the City of Birmingham obtained a search warrant from a City Judge to search the residence at 3813 Huntsville Road for drugs.
When the officers arrived at this address they found no one at home. They subsequently located Harris at a gas station some six blocks from the residence. Harris accompanied the officers to the residence where they gained entry. The search revealed illegal drugs and Harris was placed under arrest and givenMiranda warnings. Miranda v. Arizona, 384 U.S. 436,86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). After the warnings were given a woman came to the residence and asked what the police were doing at her nephew's home. One of the police officers testified as follows:
 Q. Did you have an occasion to see anybody in the house when you first got there?
A. No, sir, no one was in the house.
 Q. While you, the defendant, and the other police officers were in the house, did anybody come up to the house?
A. Yes, sir.
Q. Describe this individual for us.
A. It was an elderly black lady.
Q. Did you talk with her?
A. Yes, sir.
Q. Where was this discussion had, please?
A. In the living room.
Q. Was the defendant present?
A. Yes, sir.
Q. Tell us what she said, if anything.
 MR. BUCK: We object to it, to the out-of-court statement, Your Honor.
THE COURT: Was the defendant present?
MR. CAHILL: Yes, sir.
THE COURT: Was he?
A. Yes, sir.
THE COURT: Overrule.
Q. Tell us what she said and what you said to her.
 A. She wanted to know what we were doing in her nephew's home.
Q. What was next said?
A. I asked her if her nephew was James Harris.
Q. What did she say?
A. "Yes."
 Q. Did you have any other conversation that you can remember?
A. No, sir.
 THE COURT: Was this before the defendant was placed under arrest that you had this conversation with this woman?
A. I think it was after the arrest.
THE COURT: After the arrest?
A. Yes, sir.
The main issue at trial was whether Harris owned or resided at this address. This was vital to the State's case in order to show constructive possession of the premises where the drugs were found. Thus, the admission of the statement cannot be said under any circumstances to be harmless. If *Page 870 
it was erroneously admitted then prejudicial error is present.
The State argues that the objection to this evidence was inadequate and, further, that the evidence was admissible under the "tacit admission rule." This rule of evidence is stated inClark v. State, 240 Ala. 65, 197 So. 23 (1940), as follows:
 "It may be stated as a general rule that, when a statement is made in the presence and hearing of an accused, incriminating in character, and such statement is not denied, contradicted, or objected to by him, both the statement and the fact of his failure to deny are admissible on a criminal trial, as evidence of his acquiescence in its truth. A statement so made, of itself, would be objectionable as hearsay testimony, being a statement made at some time other than at a present trial, offered to prove the truth of the matter therein asserted, and based entirely on the credibility of a declarer not then before the court. However, as in the case of admissions generally, the statements herein considered are not offered as evidence of their truth merely because they were uttered; they are secondary in nature and are accepted in evidence as untainted by the hearsay stigma merely because they are a necessary predicate to the showing of the substantive evidence, the reaction of the accused thereto. The crystallization of the experience of men shows it to be contrary to their nature and habits to permit statements, tending to connect them with actions for which they may suffer punishment, to be made in their presence without objection or denial by them, unless they are repressed by the fact that the statement is true. Consequently, silence under accusation is some evidence from which the jury may infer that the accused acquiesced in the statement and admitted its truth. But silence or failure to deny, of itself, unaccompanied by the statement in the face of which the accused remained silent or which he failed to deny, cannot well be testified to so as to convey meaning. The witness might testify that an incriminating statement was made without stating what it consisted of, but such testimony would be objectionable as a mere conclusion. * * *"
240 Ala. 69, 197 So. 26-27.
The record does not show what Harris's response was to this statement, or whether it could be reasonably assumed that Harris heard the statement by the woman. The record does show that Harris was present, but does not elaborate on the circumstances. Even assuming that it could be argued that the record supports the conclusion that Harris failed to respond to the statement, thereby tacitly admitting the truth of it, we are convinced the hearsay statement was clearly inadmissible because of Doyle v. Ohio, 426 U.S. 610, 96 S.Ct. 2240,49 L.Ed.2d 91 (1976), wherein the Supreme Court of the United States states that
 [t]he warnings mandated by that case, [Miranda], as a prophylactic means of safeguarding Fifth Amendment rights, see Michigan v. Tucker, 417 U.S. 433, 443-444, 94 S.Ct. 2357, 2363-2364, 41 L.Ed.2d 182
(1974), require that a person taken into custody be advised immediately that he has the right to remain silent, that anything he says may be used against him, and that he has a right to retained or appointed counsel before submitting to interrogation. Silence in the wake of these warnings may be nothing more than the arrestee's exercise of these Miranda rights. Thus, every post-arrest silence is insolubly ambiguous because of what the State is required to advise the person arrested. See United States v. Hale, supra, 422 U.S. [171], at 177, 95 S.Ct. [2133], at 2137, 45 L.Ed.2d 99. Moreover, while it is true that the Miranda warnings contain no express assurance that silence will carry no penalty, such assurance is implicit to any person who receives the warnings. In such circumstances, it would be fundamentally unfair and a deprivation of due process to allow the arrested person's silence to be used to *Page 871 
impeach an explanation subsequently offered at trial.
96 S.Ct. 2244-45.
Under these circumstances we consider the objection by defense counsel to be sufficient to raise the issue.
The crux of our holding is simply that it is fundamentally unfair and in violation of due process of law to inform a person under arrest that he has a right to remain silent and then permit an inference of guilt from that silence.
The opinion of the Court of Criminal Appeals, on rehearing with one judge concurring in the result, stated that
 We have no authority to modify or change any Alabama Supreme Court opinion by declaring the law to be obsolete pursuant to a decision of the Supreme Court of the United States if such be the case.
We are not completely sure just what this statement means. We would observe, however, that the Court of Criminal Appeals has "exclusive appellate jurisdiction of all misdemeanors, including the violation of town and city ordinances, habeas corpus and all felonies, including all post conviction writs in criminal cases." Code 1975 § 12-3-9. Under our appellate system criminal cases which are appealed reach that Court first. Indeed every Court in this State is obliged to apply the decisions of the United States Supreme Court interpreting the United States Constitution. The only exception which comes readily to mind is where this Court has previously interpreted a United States Supreme Court decision contrary to the interpretation the Court of Criminal Appeals has seen fit to give the decision.
The judgment of the Court of Criminal Appeals affirming Harris's conviction is hereby reversed and the cause is remanded.
REVERSED AND REMANDED.
All the Justices concur, except BLOODWORTH, J., who is not sitting.