629 So.2d 619 (1993)
Ex parte John Wilson JOHNSON.
(Re John Wilson Johnson v. State.)
1920135.
Supreme Court of Alabama.
April 23, 1993.
Rehearing Denied August 20, 1993.
George H. Jones, Birmingham, for petitioner.
James H. Evans, Atty. Gen., and Gail Ingram Hampton, Asst. Atty. Gen., for respondent.
MADDOX, Justice.
We granted certiorari review to determine whether the trial court erred when it admitted testimony that the defendant, while being questioned by police while he was in custody, elected to remain silent and asked for legal help.
The Court of Criminal Appeals, in an unpublished memorandum, held that "[a]ny improper comment on the appellant's exercise of his Miranda right to remain silent in reference to his failure to answer a question about the knife was cured when the officer testified without objection that subsequently the appellant `wouldn't talk about the incident, and ... asked if he could have legal help." The Court of Criminal Appeals affirmed Johnson's conviction, and subsequently denied his application for rehearing and denied his motion under Rule 39(k), Ala. R.App.P., 617 So.2d 707 and 614 So.2d 1066. We reverse and remand.
Johnson was convicted of the criminal offense of burglary in the first degree with intent to rape. He was sentenced under the Habitual Felony Offender Act to a term of life without parole.
Before his arrest, Johnson, at the time a suspect in the burglary, was brought in for questioning by the police. The questioning occurred after one of the investigating officers, Sergeant Harrison, had given Johnson a standardized Miranda warning. See Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
During his trial, the following occurred during questioning by Ms. McClendon, the prosecutor:
"A. [Sgt. Harrison:] I asked him about the burglaryI asked him if he knew anything about it. He said that he had heard about the burglary across from the church *620 where he lived. And he said he had heard that from the news. I also asked him if he had been injured, and that's when he showed me the injuries that we have described. I asked him aboutI showed him a picture of the knife that had been recovered from the scene and asked him if that was his knife. And he would not tell me if it as his knife. I asked him to tell me

"Mr. Turberville: Your honor, I object to himhis electing to remain silent and invoking his right to do soany comment on it is a violation of his constitutional rights to remain silent. We ask for a mistrial.

"Ms. McClendon: Your Honor, this particular course of testimony is not the defendant invoking his right to remain silent. He had chosen to give an interview post-Miranda. During the course of the interview to some questions he has elected not to give an answer, and that is all it amounts to. And then you continue somewhat after that.
"The Court: Overruled, overruled. Go ahead.
"Q. So you asked him about the knife, what did he say and then what happened?
"A. I asked him to tell me it wasn't his knife, and he wouldn't tell me it wasn't either.

"Q. Did you continue to talk to him after that?
"A. Yes, ma'am. I talked to him a little bit after that. I talked to him about the incident again and tried to get him to talk to me about the incident. He wouldn't talk about the incident, and he later asked if he could have legal help. I considered that him asking for an attorney, and no further questioning was done at that time.

"Q. Okay. Were those his words asking for legal help? Is that what he said or what he call[ed] it?
"A. Yes ma'am. `I want legal help.'
"Q. `I want legal help.' At that point you ended the interview?
"A. That is correct."
(R. 415-17.)
In addressing the issue presented by this testimony, the Court of Criminal Appeals stated:
"The police officer testified that the appellant would not tell him whether or not the knife was his. There was testimony, to which objection was made, that the appellant positively invoked any Miranda right [sic]. Any improper comment on the appellant's exercise of his Miranda right to remain silent in reference to his failure to answer a question about the knife was cured when the officer testified without objection that subsequently the appellant `wouldn't talk about the incident, and ... asked if he could have legal help.'"
(R. 417.)
We disagree with the conclusion of the Court of Criminal Appeals that any improper comment was "cured when the officer testified without objection" that Johnson would not talk about the incident and asked if he could have legal help. Before trial, Johnson had moved to suppress any evidence concerning the knife; at a suppression hearing, the following exchange took place:
"Q. [Ms. McClendon, the prosecutor:] Okay, now, when you showed him this photograph, then what happened?
"A. [Sgt. Harrison:] I asked him about the knife, and he said that it wasn't his at first. And thenwell I asked him about the knife, and he didn't say anything at first. Then, I asked him if it was his knife, and he wouldn't say. And I asked him to tell me if it wasn't his knife and he wouldn't say that either.
"Q. All right. And at this point did you ask him any more questions after you showed him this photograph of the knife...?
"A. Well, I explained the incident and how it occurred ... and talked to him for a time about the incident. And he finally said that he wanted legal help. And at that time the questioning was terminated."
(R. 225-26.)
It seems clear that Johnson was objecting, both at the suppression hearing and *621 at his trial, to the admission of the police officer's testimony that he elected to remain silent and asked for legal help. In view of that fact, we hold that the Court of Criminal Appeals erred in concluding that any error had been cured. We agree with Johnson that the facts of this case are strikingly similar to the facts set out in Marshall v. State, 570 So.2d 832 (Ala.Cr.App.1990). In Marshall, the following occurred:
"Q. [Assistant district attorney:] And what did you ask him?
"A. [Officer Wright:] I said, Mr. Marshall, I would like to know about the brown Nissan you rented in Decatur, Georgia, and rented on June the 5th, and returned on June the 7th.
"Q. What was his response to that?
"A. Silence for a little bit. Said, I see no point in answering any more further questions, I would like my attorney now."
570 So.2d at 833. Of this similar testimony, the court in Marshall stated that "[t]he witness's response, deliberately solicited by the assistant district attorney, constituted a clear and highly improper comment on the defendant's exercise of his constitutional rights." Id. This Court, in Ex parte Marek, 556 So.2d 375, 382 (Ala.1989), abolished the tacit admission rule in pre-arrest situations "to the extent that the rule allows introduction of evidence of the accused's silence when confronted with an accusation." The Court also noted in Marek that the use of tacit admissions occurring after an individual has been given the Miranda warnings had been abolished in Ex parte Harris, 387 So.2d 868 (Ala.1980). In Harris, the Court stated: "The crux of our holding is simply that it is fundamentally unfair and in violation of due process of law to inform a person under arrest that he has a right to remain silent and then permit an inference of guilt from that silence." 387 So.2d at 871; see also Ex parte Brooks, 562 So.2d 604 (Ala.1990). "The standard is strict; virtually any description of a defendant's silence following arrest and a Miranda warning will constitute a Doyle [v. Ohio, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976)] violation." United States v. Rosenthal, 793 F.2d 1214, 1243 (11th Cir.), modified on other grounds, 801 F.2d 378 (11th Cir.1986), cert. denied, 480 U.S. 919, 107 S.Ct. 1377, 94 L.Ed.2d 692 (1987). We conclude that the holding in Marshall was correct.
The State argues that the Marshall case is distinguishable, but that any error in the admission of the testimony in this case, "even if error, was merely harmless," because "the evidence concerning [Johnson's] ownership of this knife rendered any admission or denial by him cumulative at best," and "[i]t was beyond dispute ... that [Johnson] was guilty of this crime." We cannot agree with the State's argument. We see no significant difference between the testimony that was admitted in this case and the testimony that the Court of Criminal Appeals found to be inadmissible in Marshall. We hold, therefore, that the judgment of the Court of Criminal Appeals is due to be reversed and the cause remanded for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
HORNSBY, C.J., and ALMON, ADAMS and KENNEDY, JJ., concur.
HOUSTON, STEAGALL and INGRAM, JJ., dissent.
HOUSTON, Justice (dissenting).
I would quash the writ.
Sgt. Harrison testified:
"I asked him about the knife, and he said that it wasn't his at first. And then well I asked him about the knife and he didn't say anything at first. Then I asked him if it was his knife, and he wouldn't say. And I asked him to tell me if it wasn't his knife and he wouldn't say that either."
I can distinguish this testimony from the following testimony in Marshall v. State, 570 So.2d 832, 833 (Ala.Cr.App.1990):
"A. I said, Mr. Marshall [defendant], I would like to know about the brown Nissan you rented in Decatur, Georgia, and rented on June the 5th, and returned on June the 7th.
"Q. What was his response to that?

*622 "A. Silence for a little bit. Said, I see no point in answering any more further questions, I would like my attorney now."
I believe that we should return to basics. "The crux of our holding [in Ex parte Harris, 387 So.2d 868 (Ala.1980),] is simply that it is fundamentally unfair and in violation of due process of law to inform a person under arrest that he has a right to remain silent and then permit an inference of guilt from that silence." 387 So.2d at 871.
I infer from the question in Marshall that Marshall had rented the brown Nissan in Decatur, Georgia, on June 5 and returned it on June 7. The brown Nissan had been parked near the scene of the crime. I can reasonably infer Marshall's guilt from his silence.
In the present case, the knife was found in the bed of the victim and was a crucial piece of evidence; however, I do not infer Johnson's guilt from the officer's testimony quoted above.
INGRAM, Justice (dissenting).
Because the present case is distinguishable from Marshall v. State, 570 So.2d 832, 833 (Ala.Cr.App.1990), I would quash the writ.
After being given a Miranda warning, Johnson answered extensive questions about the incident. When asked about the knife, Johnson simply did not respond. He then went on to answer more questions about the incident. Finally, Johnson refused to discuss the incident any further and "asked for legal help." At that point the detective ended the interview. At no time before asking for legal help did Johnson invoke his Fifth Amendment right against self-incrimination.
While the majority correctly states that the testimony in this case is similar to that testimony that caused the problem in Marshall, these two cases are not analogous. The testimony in Marshall set out in the majority opinion shows that the objectionable testimony was directly related to the defendant's clear invocation of his Fifth Amendment rights. In the present case, however, it is undisputed that Johnson continued to answer questions after having remained silent with regard to the knife.
The most striking similarity between Marshall and the present case is that in both cases the witness ultimately testified that the defendant terminated the interview and asked for counsel. In Marshall, the defendant objected to that testimony and the conviction was reversed, based on its admission. However, in the present case, the testimony regarding Johnson's termination of the interview was admitted without objection.
I would also conclude that the testimony regarding Johnson's refusal to answer questions about the knife was cumulative. The State presented overwhelming circumstantial evidence linking Johnson to the knife and to the crime. Accordingly, I would conclude that any error based on the testimony regarding Johnson's refusal to answer questions about the knife was harmless.
STEAGALL, J., concurs.