Scott McDonald, representing his minor sons Nathan McDonald and Christopher McDonald, appeals from a summary judgment entered by the Montgomery County Circuit Court denying Nathan and Christopher's constitutional challenge to a regulation adopted by the Alabama Department of Public Safety ("the Department"). We affirm.
 Facts and procedural history
Upon application by a citizen or a qualified alien, or by a parent on behalf of a qualified newborn child, the Social Security Administration of the United States Department of Health and Human Services issues a "Social Security account number" to that person and maintains a record of that person's earnings for purposes of determining, among other things, the old-age and other benefits to which the person may be entitled. See generally20 C.F.R. § 422.101 et seq. (1998). Because only one Social Security account number, generally known as a "Social Security number," is issued to an applicant, and because the Social Security Administration utilizes screening processes to prevent the issuance of duplicate numbers to the same person, "[l]ittle doubt exists as to the importance of the Social Security number as *Page 882 
a unique identifier." Steckler v. United States, Civ. A. 96-1054 (E.D. La., Jan. 26, 1998) (not reported in F. Supp.); accord, Bowenv. Roy, 476 U.S. 693, 710 (1986) ("Social Security numbers are unique numerical identifiers."). Not only are Social Security numbers to be routinely issued to children upon their entry into school (see 42 U.S.C. § 405(c)(2)(B)), the United States Treasury Department requires persons to apply for a Social Security number within seven days of their entry into employment for wages taxable under the Federal Insurance Contributions Act, 26 U.S.C. § 3101 et seq.; 26 C.F.R. § 31-6011(b)-2 (1998). Also, persons required to complete federal tax returns must disclose their Social Security number, and must disclose their children's Social Security numbers in order to receive statutory income-tax dependency exemptions respecting those children. See 26 U.S.C. § 6109(a) 151(e). Thus, in modern American society, it can safely be said that most people have been issued a unique Social Security number.
In recognition of the ubiquity of Social Security numbers, Congress has provided for the use of Social Security numbers as a means of identification in certain instances, specifically including the issuance of motor vehicle driver's licenses:
 "It is the policy of the United States that any State . . . may, in the administration of any . . . driver's license . . . law within its jurisdiction, utilize the Social Security account numbers issued by the Commissioner of Social Security for the purpose of establishing the identification of individuals affected by such law, and may require any individual who is or appears to be so affected to furnish to such State . . . or any agency thereof having administrative responsibility for the law involved the Social Security account number . . . issued to him by the Commissioner of Social Security."
42 U.S.C. § 405(c)(2)(C)(i).
By statute, the defendant Department is headed by the state director of public safety, who is empowered "to do all that is necessary to administer and enforce" the motor vehicle laws of Alabama. Sections 32-2-1 and 32-2-5, Ala. Code 1975. The director of public safety is statutorily authorized to adopt, with the approval of the Governor, "reasonable rules and regulations not in conflict with the laws of this state concerning operation of motor vehicles and concerning the enforcement of the provisions" of title 32, chapter 6, article 1 of the Alabama Code, which pertains to the issuance of driver's licenses. Section32-6-13, Ala. Code 1975. Regulation 760-X-1-.19, Ala. Admin. Code, which was adopted pursuant to that authority, provides, in pertinent part, that "[a]ll persons applying for a driver license shall be required to furnish to the . . . Department . . . their Social Security number in order to obtain an Alabama driver license." The Department uses such numbers in administering the driver's license laws of Alabama, and requires that such numbers be kept confidential except to the extent that the use of them is permitted by state and federal law. Id.
In a 38-page affidavit filed in the trial court, Scott McDonald averred, among other things, that he adheres to the view that a Social Security number is a precursor to, or is itself, the "Mark of the Beast" referred to in the Book of Revelation, a portion of the Bible's New Testament,[1] and that he is not to accept such a mark. Nathan and Christopher also filed affidavits indicating that their parents have taught them, and that they hold, similar religious beliefs with respect to Social Security numbers. Nathan and Christopher *Page 883 
have never been issued Social Security numbers.
Nathan and Christopher, upon attaining the age of 15 years, each applied for a learner's license, a form of driver's license that, if issued, permits the holder thereof to operate a motor vehicle when accompanied by either a certified driving instructor or a parent or legal guardian who holds a driver's license. Section 32-6-8(b), Ala. Code 1975. The Department informed Nathan and Christopher that in order for them to obtain learner's licenses, they would be required to provide Social Security numbers, and that they would not be allowed to take the Department's written license examination until they had supplied Social Security numbers. After contacting the Governor's office, Scott McDonald was informed that the Department recognized a defacto exception to the Social-Security-number requirement for persons who complete a form affidavit averring that, for religious reasons, they do not have Social Security numbers. A Department staff member gave Scott McDonald a copy of this form, but the McDonalds refused to execute this form, on the advice of their attorney, who opined that the form was not proper because it had not been promulgated as an administrative rule under the Alabama Administrative Procedure Act ("AAPA"), § 41-22-3(9), Ala. Code 1975.
Nathan and Christopher, proceeding through their father and next friend, Scott McDonald, sued the Department, seeking a declaration that Regulation 760-X-1-.19 was invalid as an unlawful infringement upon their rights under the First Amendment to the United States Constitution to the free exercise of their religion; they further sought an injunction against the enforcement of the regulation. All parties thereafter filed summary-judgment motions. The trial court denied Nathan and Christopher's motions for a summary judgment. However, the trial court entered a summary judgment in favor of the Department, on the basis that the Department had offered Nathan and Christopher an alternative to complying with Regulation 760-X-1-.19, but that they had failed or refused to accept it.
Nathan and Christopher appealed to the Alabama Supreme Court, which transferred the appeal to this court on the basis that the appeal is within this court's appellate jurisdiction.
 Issues for review
Nathan and Christopher raise three issues relating to the validity and constitutionality of Regulation 760-X-1-.19, and a fourth issue concerning the validity, under the AAPA, of the form affidavit used by the Department to accommodate persons objecting to that regulation on religious grounds. Because the pertinent facts giving rise to the their claim are undisputed, we review the trial court's application of law to those facts to determine whether the Department was entitled to a judgment as a matter of law. Carpenter v. Davis, 688 So.2d 256, 258 (Ala. 1997). "In reviewing the judgment of the trial court, this Court will not presume error and will affirm the trial court's judgment if it is supported by any valid legal ground." McGowan v.Chrysler Corp., 631 So.2d 842, 847 (Ala. 1993).
Because the necessity of considering the fourth issue, i.e., the validity of the Department's form affidavit, is dependent upon Nathan and Christopher's entitlement to relief with respect to the regulation itself, we first consider whether Regulation 760-X-1-.19 is valid and constitutional.
 I. Statutory basis of Regulation 760-X-1-.19
Nathan and Christopher first contend that Regulation760-X-1-.19 has no statutory foundation. However, a cursory reading of 42 U.S.C. § 405(c)(2)(C)(i) indicates that Congress has provided that a state agency responsible for administering that state's laws for licensing drivers may require any individual who is or appears to be affected by those laws to furnish his or her Social Security number. Moreover, the Department, under the direction of its *Page 884 
director, is empowered "to do all that is necessary to administer and enforce" the motor vehicle laws of Alabama, under §§ 32-2-1
and 32-2-5, Ala. Code 1975, including adopting "reasonable rules and regulations" concerning the issuance of driver's licenses (§ 32-6-13, Ala. Code 1975). Finally, Congress has recently enacted legislation mandating, as a requirement a state's receiving block grants for federal welfare benefits, that the state have in effect laws requiring applicants for driver's licenses to give their Social Security numbers (see 42 U.S.C. § 666(a)(13)(A)). Under these circumstances, we cannot conclude that Regulation760-X-1-.19 is without a statutory basis.
 II. First Amendment free-exercise challenge
Nathan and Christopher next contend that Regulation 760-X-1-.19
is an impingement upon their rights, as afforded by the First Amendment to the United States Constitution, held applicable to the states by incorporation into the Fourteenth Amendment's Due Process Clause (see Cantwell v. Connecticut, 310 U.S. 296, 303
(1940)), to the free exercise of their religion. In resolving this issue of federal constitutional law, we are bound by the precedents of the United States Supreme Court: "[E]very Court in this state is obliged to apply the decisions of the United States Supreme Court interpreting the United States Constitution." Exparte Harris, 387 So.2d 868, 871 (Ala. 1980).
In Employment Div. v. Smith, 494 U.S. 872 (1990), the United States Supreme Court considered whether the free-exercise guaranty of the First Amendment permitted a state to prohibit all drug use, including drug use that was purportedly religiously inspired. The Supreme Court in Smith reversed a judgment in favor of two applicants for unemployment benefits, who had contended that a state board's classification of their religiously inspired use of peyote as disqualifying "misconduct" was inconsistent with the Free Exercise Clause. The Court specifically rejected the applicants' argument that the Free Exercise Clause prevented a state from "requiring any individual to observe a generally applicable law that requires (or forbids) the performance of an act that his religious belief forbids (or requires)."494 U.S. at 878. The Court further declined the applicants' request to subject the drug-use prohibition to scrutiny requiring that "governmental actions that substantially burden a religious practice . . . be justified by a compelling governmental interest," holding that "[t]o make an individual's obligation to obey such a law contingent upon the law's coincidence with his religious beliefs, except where the State's interest is `compelling[,]' . . . contradicts both constitutional tradition and common sense." 494 U.S. at 885.[2]
In reaching the second of these conclusions, the Smith
Court relied upon the plurality opinion of Chief Justice Burger inBowen v. Roy, supra. In Bowen, the Court held that a federal statute requiring applicants for federal welfare assistance to furnish their Social Security numbers was constitutional as applied to two applicants who held a religious belief that the use of the number would harm their daughter's spirit. The Bowen
plurality rejected the "least restrictive means of accomplishing a compelling governmental interest" test, which had been applied by the trial court and which had been advocated by the dissent, concluding that the statutory Social-Security-number requirement promoted the legitimate and important public interest of preventing welfare fraud, and determining that the requirement was a *Page 885 
"reasonable means of promoting that goal." 476 U.S. at 707-10. In doing so, the Bowen plurality made the following pertinent observation:
 "It is readily apparent that virtually every action that the Government takes, no matter how innocuous it may appear, is potentially susceptible to a Free Exercise objection. For example, someone might raise a religious objection, based on Norse mythology, to filing a tax return on a Wednesday (Woden's day). Accordingly, if the dissent's interpretation of the Free Exercise Clause is to be taken seriously, then the Government will be unable to enforce any generally applicable rule unless it can satisfy a federal court that it has a `compelling government interest.' While libertarians and anarchists will no doubt applaud this result, it is hard to imagine that this is what the Framers intended."
476 U.S. at 707 n. 17 (emphasis in original).
The interpretation of the Free Exercise Clause set forth by the plurality in Bowen, although it garnered only four votes in that case, is effectively the same interpretation that was later adopted by the Court in Smith, and which is binding on this court.Ex parte Harris, 387 So.2d at 871. Accordingly, we review Nathan and Christopher's challenge to Regulation 760-X-1-.19 to determine whether the regulation "is a reasonable means of promoting a legitimate public interest." Bowen, 476 U.S. at 707-08.
In support of its motion for a summary judgment, the Department submitted the affidavit of the chief of its Driver License Division, who offers the following reasons why Regulation760-X-1-.19 is currently in effect:
 "Driver license fraud has been a major problem in the State of Alabama. Criminals have been able to present themselves for driver licenses using someone else's name and have a license issued in that name. By using this license, they have been able to commit numerous acts of fraud. This is a continuing problem.
 "One of the universal means of identification of individuals throughout the United States and with other driver license units of states is the Social Security number. Because people are mobile in this day and time, they commit offenses in other states. In order to identify these individuals and remove incompetent and dangerous drivers from the road, we need a universal means of identification. The Social Security number is one of the only means of identifying persons throughout the country.
 "The Driver License Division has received information on individuals who have the same name, same race, same age, and have lived within the same community. Without the Social Security number, it would be impossible to identify a person with any degree of certainty.
 "The Driver License Division of the Department of Public Safety is required by federal law to suspend the license of persons who have failed to pay their child support. The means of doing this between departments in the State and State agencies outside Alabama is through the individual's Social Security number."
While Scott McDonald's 17-page affidavit in response to this affidavit offers several reasons that might well convince a legislative body writing on a clean slate to decline to adopt a Social-Security-number requirement for driver licensing, such as the fact that certain criminals have been known to possess multiple Social Security numbers, it is not the role of this court to conduct such a searching inquiry into the wisdom of Regulation760-X-1-.19, or of its federal statutory bases. Rather, Smith
and Bowen limit our inquiry to determining whether the Social-Security-number requirement adopted by the Department is areasonable method of accomplishing legitimate state goals.
As we have noted, practically every American citizen has obtained, or will at some time obtain, a unique Social Security number pursuant to federal law. At the *Page 886 
same time, the Department is responsible for enforcing Alabama laws regarding motor vehicle driver's licenses, which entails not only a duty of initially determining whether a driver's license applicant actually is who he or she claims to be, but also of maintaining records concerning an applicant's licensing and driving history in other states. See §§ 32-6-14 32-6-31, arts. III-V, Ala. Code 1975. Additionally, the failure to require driver's-license applicants to provide Social Security numbers would result in Alabama's loss of federal welfare grants; such a loss would necessarily affect the ability of numerous disadvantaged citizens of this state to receive public assistance.See 42 U.S.C. § 666(a)(13). We conclude that identifying applicants with bad driving records, distinguishing between drivers having the same name, and maintaining Alabama's eligibility for federal welfare grants are legitimate state goals, and that the Department's regulation requiring an applicant to provide a Social Security number, which is "facially neutral and applies to all applicants," is a reasonable means of achieving these goals. For these reasons, Regulation 760-X-1-.19 does not contravene the Free Exercise Clause of the United States Constitution. Accord, State v. Loudon, 857 S.W.2d 878, 880-82
(Tenn.Crim.App.), petition to appeal denied (Tenn. 1993); seealso Penner v. King, 695 S.W.2d 887, 889-91 (Mo. 1985) (en banc) (affirming denial of driver's licenses to applicants refusing to disclose Social Security numbers, noting that "[o]peration of a motor vehicle on the highways of [this] state is a privilege which is subject to conditions in the public interest").
As a final matter, we note that in the trial court Nathan and Christopher did not assert any claim that Regulation760-X-1-.19 violates the Alabama Constitution. We therefore do not reach that issue, because "[t]his court will not consider a theory or issue where it was not pleaded or raised in the trial court." Garrison v. International Enters., Inc., 585 So.2d 84, 86
(Ala.Civ.App. 1991).
However, in their reply brief to this court, Nathan and Christopher have sought leave from this court to amend their complaint to state a free-exercise claim under the Alabama Constitution. They candidly admit that they have sought such relief because the Alabama Constitution has recently been amended to provide for a "least restrictive means" test with respect to analysis of the propriety of governmental burdens upon a person's free exercise of religion. Ala. Const. 1901, amend. 622. We decline this request:
 "The trial court has committed no error in dismissing the complaint, and since we can only review alleged error by the trial court, it would be inappropriate to remand the cause to allow a new theory of liability to be presented at this stage of the proceeding. We do not have that authority under the general rules of appellate review and should not assume it under our inherent authority of general superintendence of the circuit courts."
Brown v. Transportation Ins. Co., 448 So.2d 348, 349 (Ala. 1984).
 III. Equal-protection challenge
Nathan and Christopher's final issue concerns whether Regulation 760-X-1-.19 violates constitutional guaranties of equal protection. Whether they have asserted a violation of the United States Constitution or a violation of the Alabama Constitution is unclear; however, Nathan and Christopher state no reason, and we are aware of none under the facts of this case, why analysis of equal-protection issues arising under the United States Constitution would differ from analysis of equal-protection issues arising under the Alabama Constitution. Plitt v. Griggs,585 So.2d 1317, 1325 (Ala. 1991).
Although Nathan and Christopher assert that a "compelling state interest" must support Regulation 760-X-1-.19, this misstates the applicable standard of review. Because the class of applicants for driver's licenses who refuse to provide a Social Security number to the Department, which class includes Nathan and Christopher, *Page 887 
does not form a constitutional "suspect class" (see Indian RiversCommunity Health Ctr. v. City of Tuscaloosa, 443 So.2d 894,896 (Ala. 1983)), and because "the possession of a driver's license is a `privilege' rather than a fundamental right" (R.T.M. v. State,677 So.2d 801, 806 (Ala.Crim.App. 1995)), the applicable standard of review is the so-called "rational basis" standard; i.e., if Regulation 760-X-1-.19 "is rationally related to a legitimate state interest, it will be sustained." Yarchak v. Munford, Inc.,570 So.2d 648, 650 (Ala. 1990).
In upholding the Department's Social-Security-number requirement as against Nathan and Christopher's Free Exercise Clause challenge, we have already detailed how Regulation760-X-1-.19 is a reasonable means of promoting legitimate public interests. The same factors compel a conclusion that Regulation760-X-1-.19 is rationally related to legitimate state interests; thus, we hold that that regulation does not infringe upon Nathan and Christopher's rights under the United States and Alabama Constitutions to equal protection of the laws.
 Conclusion
Based upon the foregoing facts and authorities, we conclude that the trial court properly denied the relief requested by Nathan and Christopher in their complaint. The summary judgment in favor of the Department was thus properly entered. Because we conclude that Nathan and Christopher are not entitled to the relief requested in their complaint, we do not reach the derivative issue whether the Department's alleged "accommodation" affidavit form constituted an invalid "rule" under the AAPA.
AFFIRMED.
Yates, Monroe, Crawley, and Thompson, JJ., concur.
[1] "And [the beast] causeth all, both small and great, rich and poor, free and bond, to receive a mark in their right hand, or in their foreheads: And that no man might buy or sell, save he that had the mark, or the name of the beast, or the number of his name." Holy Bible, Revelation 13:16-17 (King James Version).
[2] We note that Congress's effort to overturn Smith
legislatively has been held unconstitutional as applied to the states. See City of Boerne v. Flores, 521 U.S. 507 (1997) (holding that Congress exceeded its enforcement powers under § 5 of the Fourteenth Amendment in enacting the "Religious Freedom Restoration Act," 42 U.S.C. § 2000bb-1 et seq.).